**Dr. Robert MORRIS, D.V.M. and Joyce M. Morris, Appellants,**

v.

**Claire POWELL and Sharon Holman, Individually and As Next Friend of Marilyn Holman and Mark Holman, Minor Children, d/b/a Powell Holman Boer Goats, Appellees.**

No. 04–04–00074–CV.

Court of Appeals of Texas, San Antonio.

Aug. 11, 2004.

---

Donald A. Ferrill, R. Mark Oliver, Brown Pruitt Peterson & Wambsganss, P.C., Fort Worth, for appellants.

Kelly Putney Rogers, Joe M. Davis, Nunley, Davis, Jolley & Hill, L.L.P.,

Boerne, David W. Wallace, Wallace Law Office, Sonora, for appellees.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

This is an accelerated appeal from the denial of appellants' special appearances, in which they asserted the trial court did not have personal jurisdiction over them because they are non-residents of Texas and any contacts that occurred in Texas were on behalf of their employer, Morris Genetics, L.L.C. We affirm in part and reverse and render in part.

## BACKGROUND

Appellants, Dr. Robert Morris and Joyce Morris, are residents of Missouri. Dr. Morris has a Texas veterinary license and he regularly performs embryo transplant surgeries in Texas. Mrs. Morris is an embryologist who works with Dr. Morris when he performs the transplant surgeries. Morris Genetics, L.L.C. is a Missouri limited liability company. Over a four-day period in September 2001, the Morrises performed embryo transplant surgeries on plaintiffs' Boer goats. The transplants were not as successful as plaintiffs had hoped, and plaintiffs sued the Morrises individually and Morris Genetics, L.L.C. Plaintiffs alleged causes of action for negligence and fraud and/or negligent misrepresentation. The essence of plaintiffs' claim is that the Morrises represented that their transplant program could achieve a seventy percent success rate; but instead, it achieved only a ten percent success rate. Plaintiffs allege the Morrises misrepresented their success rate and failed to use the proper standard of care "in keeping their equipment clean." Morris Genetics, L.L.C. did not challenge the trial court's jurisdiction. However, relying on the fiduciary shield doctrine, the Morrises challenged the trial court's exercise of personal jurisdiction over them.

## STANDARD OF REVIEW

A plaintiff bears the initial burden of pleading sufficient allegations to bring a non-resident defendant within the provisions of the Texas long-arm statute. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002). Whether a court has personal jurisdiction over a defendant is a question of law. *American Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 805–06 (Tex. 2002); *BMC Software,* 83 S.W.3d at 794. On appeal, we review de novo the trial court's determination to grant or deny a special appearance. *Coleman,* 83 S.W.3d at 806; *BMC Software,* 83 S.W.3d at 794. To resolve the issue of jurisdiction, the trial court must frequently also determine questions of fact. *Coleman,* 83 S.W.3d at 806; *BMC Software,* 83 S.W.3d at 794.

If a trial court makes findings of fact and conclusions of law, we may review the fact findings for legal and factual sufficiency. *BMC Software,* 83 S.W.3d at 794. If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Id.* at 795. We reverse the ruling for factual insufficiency of the evidence only if the ruling is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Minucci v. Sogevalor, S.A.,* 14 S.W.3d 790, 794 (Tex.App.-Houston [1st Dist.] 2000, no pet.). Unchallenged fact findings are binding on the appellate court. *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 632 (Tex.App.-Dallas 1993, writ denied). We review de novo the trial court's legal conclusions based on the find-

ings of fact to determine their correctness. *BMC Software,* 83 S.W.3d at 794. If we determine a conclusion of law is erroneous but the trial court nevertheless rendered a proper judgment, the erroneous conclusion does not require reversal. *Id.*

## PERSONAL JURISDICTION

A Texas court may assert personal jurisdiction over a non-resident defendant only if the requirements of both the United States Constitution and the Texas long-arm statute are satisfied. *CSR, Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996) (orig.proceeding). The Texas long-arm statute allows a Texas court to exercise personal jurisdiction over a non-resident defendant who does business in Texas. Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997); *BMC Software,* 83 S.W.3d at 795. The Texas long-arm statute reaches as far as the federal and state constitutional guarantees of due process allow. *CSR,* 925 S.W.2d at 594. Therefore, "the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations." *Id.*

The due process clause permits a state to exert personal jurisdiction over a non-resident defendant only if the defendant has some minimum, purposeful contacts with the state and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *Dawson–Austin v. Austin,* 968 S.W.2d 319, 326 (Tex.1998). A non-resident who has purposely availed himself of the privileges and benefits of conducting business in Texas has sufficient contacts with the forum to confer personal jurisdiction over it. *CSR,* 925 S.W.2d at 594. However, a defendant should not be subjected to the jurisdiction of a Texas court based upon random, fortuitous, or attenuated contacts. *CSR,* 925 S.W.2d at 595. A non-resident defendant must have purposely established such minimum contacts with the forum that it could reasonably anticipate being sued there. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985).

The minimum-contacts analysis is further divided into general and specific personal jurisdiction. General jurisdiction is present when a defendant's contacts are continuous and systematic, permitting the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *CSR,* 925 S.W.2d at 595. General jurisdiction requires a showing that the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction. *Id.*

The minimum-contacts analysis for specific personal jurisdiction focuses on the relationship between the defendant, the forum, and the litigation. *Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 227 (Tex.1991). Specific personal jurisdiction is established if the defendant's alleged liability arises from, or is related to, an activity conducted within the forum. *Id.* The defendant's contacts must have been "purposely directed" at the forum and must have had a "substantial connection" that resulted in the alleged injuries. *Id.* at 228.

An individual's transaction of business within Texas solely as a corporate officer or employee does not create personal jurisdiction over that individual even though a Texas court has in personam jurisdiction over the corporation. *Stuart v. Spademan,* 772 F.2d 1185, 1197 (5th Cir.1985). Texas appellate courts have held that the fiduciary shield doctrine does

not protect a corporate employee from the exercise of specific jurisdiction as to torts for which the employee may be held individually liable. *Stern v. KEI Consultants, Ltd.*, 123 S.W.3d 482, 488 (Tex.App.-San Antonio 2003, no pet.); *see also SITQ E.U., Inc. v. Reata Restaurants, Inc.*, 111 S.W.3d 638, 651 (Tex.App.-Fort Worth 2003, pet. denied). However, although an individual's contacts with a forum should not be analyzed based on his or her employer's activities in that forum, one's status as an employee does not insulate the employee from the trial court's jurisdiction. *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984); *SITQ*, 111 S.W.3d at 651. "There is no blanket protection from jurisdiction simply because a defendant's alleged acts were done in a corporate capacity." *SITQ*, 111 S.W.3d at 651. Instead, each defendant's contacts with the forum state must be assessed on an individual basis. *Calder*, 465 U.S. at 790, 104 S.Ct. at 1487.

The Fifth Circuit has held that the "thrust of the general rule is that the officer to be held personally liable must have some direct, personal participation in the tort, 'as where the defendant was the 'guiding spirit' behind the wrongful conduct ... or the 'central figure' in the challenged corporate activity.'" *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cir.1985) (quoting *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 907 (1st Cir.1980)). Here, plaintiffs alleged the Morrises committed the torts of negligence and fraud and/or negligent misrepresentation. Plaintiffs spoke directly with Dr. Morris about conducting the embryo transplant services in Texas. It is not clear whether plaintiffs spoke to Mrs. Morris. The Morrises, as the only employees of Morris Genetics, L.L.C., performed those services in Texas. Any tortious acts will be attributable to the Morrises and all

representations were made by one or both of the Morrises. Therefore, the plaintiffs made a prima facie showing that the Morrises are not protected by the fiduciary shield doctrine from the trial court's exercise of specific jurisdiction over them.

## GENERAL JURISDICTION

As evidence that the Morrises' contacts were continuous and systematic, and that they conducted substantial activities within Texas, plaintiffs produced the following evidence: (1) Dr. Morris and Mrs. Morris have traveled to Texas since 1995 to perform embryo transplant services for a number of clients and (2) the Morrises come to Texas to visit family.

As a general rule, a court may not assert personal jurisdiction over an individual based on the individual's relation to a corporation unless the corporation is the individual's alter ego. *Tuscano v. Osterberg*, 82 S.W.3d 457, 468 (Tex.App.-El Paso 2002, no pet.); *Royal Mortg. Corp. v. Montague*, 41 S.W.3d 721, 738 (Tex.App.-Fort Worth 2001, no pet.). A party asserting alter ego must prove this allegation. *See BMC Software*, 83 S.W.3d at 798. Accordingly, in order for the trial court to have properly denied the Morrises' special appearances, the record must contain evidence to support the trial court's finding of alter ego. *Id.* at 799–800.

Alter ego applies when there is such unity between a corporation and an individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice. *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex.1986). Alter ego may be shown "from the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control

the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Id.* As proof of alter ego, a court may consider: (1) the payment of alleged corporate debts with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for his personal use; (4) inadequate capitalization; and (5) other failure to keep corporate and personal assets separate. *See Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 228 (Tex.1990); *Goldstein v. Mortenson,* 113 S.W.3d 769, 781 (Tex. App.-Austin 2003, no pet.); *Howell v. Hilton Hotels Corp.,* 84 S.W.3d 708, 715 (Tex. App.-Houston [1st Dist.] 2002, pet. denied); *Pinebrook Properties, Ltd. v. Brookhaven Lake Property Owners Ass'n,* 77 S.W.3d 487, 500 (Tex.App.-Texarkana 2002, pet. denied).

■■■■ As evidence of alter ego, plaintiffs contend first that the Morrises are the sole shareholders, officers, and employees of Morris Genetics, L.L.C. However, an individual's standing as an officer, director, or majority shareholder of an entity alone is insufficient to support a finding of alter ego. *Goldstein,* 113 S.W.3d at 781. The plaintiffs also allege the Morrises did not hold corporate meetings or maintain corporate minutes. However, failure to comply with corporate formalities is no longer a factor in considering whether alter ego exists. Tex. Bus. Corp. Act Ann. art. 2.21(A)(3) (Vernon 2003); *Howell,* 84 S.W.3d at 714; *Pinebrook Properties,* 77 S.W.3d at 499. The plaintiffs also rely on the following: (1) neither of the Morrises were paid a salary, instead, they paid themselves on a "draw" basis as needed; and (2) their business card states "Morris Genetics," but not "L.L.C." Finally, when asked if there was "documentation given to you showing that

[the Morrises] were going to do work for you?", one of the plaintiffs responded, "That's exactly how it was presented to me."

Dr. Morris explained he and his wife drew money from the company account, "By seeing our financial circumstances, what we need money for and what our accountant tells us we should do." Although the Morrises do not always consult with their accountant when making draws, they are each aware of when a draw is made. The Morrises alleged, and plaintiffs did not dispute, that (1) the company has always been adequately capitalized such that it is able to and does pay its debts as they come due; (2) the company has liability insurance; (3) there are no outstanding judgments against the company; and (4) the company and the Morrises maintain separate bank accounts.

This record does not show such unity between the Morrises and the corporate entity that the separateness of the corporation had ceased to exist. Accordingly, we hold that the evidence is insufficient to support the trial court's finding that Morris Genetics, L.L.C. is the alter ego of the Morrises. For this reason, the trial court erred in denying the special appearances on the grounds that it had general jurisdiction over the Morrises.

## SPECIFIC JURISDICTION

Although the trial court does not have general jurisdiction over the Morrises, a defendant must negate all possible grounds for personal jurisdiction in order to prevail on a special appearance. *BMC Software,* 83 S.W.3d at 793. Accordingly, we next consider whether the trial court has specific jurisdiction over each of the defendants.

■■■■ Corporate agents are individually liable for fraudulent or tortious acts committed while in the service of their

corporation. *Shapolsky,* 56 S.W.3d at 133. A corporate officer is primarily liable for his own torts, even though the principal is also liable for those actions. *Id.* However, the fact that a corporate officer is alleged to have committed a tort in Texas is not dispositive because that, alone, does not give Texas courts jurisdiction over a non-resident. *Id.; Stern,* 123 S.W.3d at 489. Instead, there must be a substantial connection between the contact and the cause of action in the forum state. *See id.*

■■■ In determining whether there is a substantial connection between the nonresident defendant and the State of Texas, we must consider "foreseeability." *Guardian Royal Exch.,* 815 S.W.2d at 227. Where a defendant sends false information into a state, knowing it will be relied upon by a resident of the forum state, there is a foreseeable consequence of direct economic injury to the resident at its domicile. *See Calder,* 465 U.S. at 790, 104 S.Ct. at 1487; *Shapolsky,* 56 S.W.3d at 134. Therefore, if the alleged tortfeasor knows that the brunt of the injury will be felt by a particular resident in the forum, it must reasonably anticipate being haled into court there to answer for its actions. *Id.*

Plaintiffs alleged the following facts in support of the trial court's jurisdiction over the Morrises: (1) from on or about September 26, 2001 through September 29, 2001, the Morrises came to plaintiffs' ranch in Edwards County, Texas to perform veterinary and embryo transplant services on plaintiffs' Boer goats for the purpose of obtaining up to 252 Boer kids; (2) the Morrises transplanted 361 Boer embryos over this same time period; (3) the Morrises represented they had the necessary skill, licensure, and experience to achieve a successful embryo transplant program; (4) the Morrises represented an estimated 252.8 pregnancies from the embryo transplants; (5) the Morrises repre-

sented that Dr. Morris was a skilled and licensed veterinarian and Mrs. Morris was a skilled and licensed embryologist; and (6) despite the represented pregnancies, only twenty-nine live births were achieved.

Under their negligence claim, plaintiffs alleged the following: (1) Dr. Morris lacked the surgical skill necessary to satisfy the appropriate standard of care for a veterinarian performing embryo transplants; (2) the Morrises failed to care for their microscopes according to industry standards; (3) the Morrises failed to use proper care or proper equipment in transplanting the embryos; (4) the Morrises failed to properly transplant the embryos; and (5) the Morrises failed to use clean, bacteria-free equipment to perform the transplants. Under their fraud and/or negligent misrepresentation claim, plaintiffs alleged the following: (1) the Morrises represented term pregnancies of 252.8 Boer kids and they represented themselves as having the requisite skill and knowledge to achieve such results; (2) the Morrises knew or should have known that there were problems with their embryo transplant program, in advance of September 25, 2001, but failed to divulge such problems to plaintiffs; (3) the Morrises knew of poor results achieved in embryo transplants they performed in April 2001 and knowingly or recklessly represented to plaintiffs probable outcomes contrary to those results to induce plaintiffs to hire them; and (4) had plaintiffs known of the results achieved in April 2001, they would not have hired the Morrises to perform embryo transplants at their ranch.

The Morrises assert that these allegations and plaintiffs' evidence fail to differentiate between performing their corporate duties for Morris Genetics, L.L.C. and them acting in their individual capacities. When, as here, there are multiple defendants, we must test each defendant's ac-

tions and contacts with the forum separately. *Shapolsky v. Brewton,* 56 S.W.3d 120, 132 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). "At this stage of the proceeding, this court is not charged with determining the merit of" plaintiffs' allegations against the Morrises. *Stern,* 123 S.W.3d at 489. Instead, we examine plaintiffs' allegations and then determine whether the evidence establishes a substantial connection between each of the Morrises and Texas. *Id.*

### Evidence as to Both of the Morrises' Contacts

Dr. Morris and Mrs. Morris are the incorporators, shareholders, officers, and sole employees of Morris Genetics, L.L.C. A copy of the Morrises' business card identifies Morris Genetics, but without the "L.L.C." designation. Under the words "Morris Genetics," appear the following two lines: "Robert G. Morris, DVM" and "Joyce M. Morris, Embryologist." Other documents admitted at the hearing likewise showed Morris Genetics, without the L.L.C. designation, and listed the Morrises by name with their respective titles. Plaintiffs allege certain representations were made about the number of live births to be expected, but plaintiffs do not indicate which of the Morrises made those representations. One of the plaintiffs said she received letters from the Morrises "concerning the proposed embryo transfer program," but a copy of those letters is not in the record and plaintiff did not explain the content of the letters.

### Evidence Specific to Dr. Morris' Contacts

Plaintiffs initially spoke with Dr. Morris about performing the embryo transplant services in Texas, but the content of the conversation is not in the record. Dr. Morris performed the embryo

transplant surgeries at issue in the underlying lawsuit. In interrogatories from a lawsuit brought by another dissatisfied rancher against the Morrises and attached to plaintiffs' response to the Morrises' special appearances, Dr. Morris admitted "his" normal success rate "as an employee of Morris Genetics, L.L.C." ranged from forty to seventy percent, but that rate fell to approximately twenty percent in the Fall of 2001, and one reason for the decline "could be that [he] found anaerobic bacterial spores in the head of [his] microscope." Dr. Morris stated he obtained his veterinary license in Texas in 2000 "[t]o act as an employee of Morris Genetics, L.L.C., and we were doing some work in Texas, and I visited with the Texas Board, they recommend[ed] I get a license."[1] Plaintiffs alleged Dr. Morris knew of his declining success prior to September 2001, but did not disclose this information to them. One of the plaintiffs testified she expected from the Morrises the same result other veterinarians achieved for her in past embryo transplants, approximately seventy-five percent.

Without deciding the merits of plaintiffs' fraud or negligent misrepresentation claims, when Dr. Morris provided plaintiffs with an estimate of approximately 252.8 pregnancies while allegedly withholding information about his declining success rate, he knew the plaintiffs were in Texas and it was foreseeable that plaintiffs would rely on the estimated success rate he represented to them. *See Calder,* 465 U.S. at 789–90, 104 S.Ct. at 1487; *Shapolsky,* 56 S.W.3d at 134. Accordingly, the injurious effect in Texas of the torts Dr. Morris allegedly committed could have been foreseen. Furthermore, there is a strong nexus between the alleged torts committed by

---

1. Prior to 2000, Dr. Morris performed embryo transplant services in Texas without a license apparently under a referral from an attending veterinarian.

Dr. Morris and the contacts with Texas, *i.e.*, it is these specific contacts that give rise to the claims brought by plaintiffs against Dr. Morris.

For these reasons, we conclude that Dr. Morris' alleged actions/inactions support a finding that the trial court had specific jurisdiction over him.

**Evidence Specific to Mrs. Morris' Contacts**

 Mrs. Morris performed her duties as an embryologist in Texas. In interrogatories from the other lawsuit and attached to plaintiffs' response to the Morrises' special appearances, Mrs. Morris admitted "Morris Genetics, L.L.C.'s" normal success rate ranged from forty to seventy percent, but that rate fell to approximately twenty percent in the Fall of 2001. None of the plaintiffs said they spoke to Mrs. Morris.

We conclude that these allegations, specific to Mrs. Morris, do not constitute sufficient purposeful minimum contacts with Texas to satisfy due process. The fact that Mrs. Morris, a Morris Genetics, L.L.C. corporate officer, is alleged to have committed a tort in Texas is not dispositive because that, alone, does not give Texas courts jurisdiction over her as a nonresident. *Shapolsky*, 56 S.W.3d at 133; *Stern*, 123 S.W.3d at 489. Therefore, the trial court does not have specific jurisdiction over Mrs. Morris.

### FAIR PLAY AND SUBSTANTIAL JUSTICE

 We next consider whether Dr. Morris met his burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Guardian Royal*, 815 S.W.2d at 231. "Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, the contacts are evaluated in light of other factors to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice." *Id.* at 228. These factors include (1) the burden on the defendant, (2) the forum state's interests in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Id.*

 In their special appearances and on appeal, the Morrises allege that "[l]itigating this matter individually from Missouri would be very inconvenient, extremely expensive, and cause substantial disruptions to them in the event of prolonged absences for litigation purposes, creating a substantial burden on [them]." We do not believe this burden would be so great as to be inconsistent with the constitutional guarantees of due process. The Morrises travel to Texas to conduct their business and to visit family and friends. The alleged negligence occurred in Texas and the Morrises were paid for their services while in Texas. Texas's interest in adjudicating this dispute becomes even stronger when, as here, the tort is alleged to have been committed in whole or in part in Texas. *Shapolsky*, 56 S.W.3d at 135. We therefore hold the trial court did not err in finding that exercising jurisdiction over Dr. Morris comports with traditional notions of fair play and substantial justice.

### CONCLUSION

The trial court has specific jurisdiction over Dr. Morris and the exercise of that jurisdiction comports with fair play and substantial justice. Accordingly, we affirm the trial court's Order Overruling Objec-

tion to Jurisdiction as to Dr. Morris. The trial court does not have either general or specific jurisdiction over Mrs. Morris. Accordingly, we reverse the trial court's Order Overruling Objection to Jurisdiction as to Mrs. Morris, and render judgment dismissing the cause against Mrs. Morris for lack of personal jurisdiction.