

**NUMBER 13-07-465-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **AJMAL KHAN AND GLOBAL TECHNOLOGIES & RESOURCES,** | **Appellants,** |
| **v.** | |
| **LAL MURJANI REWACHAND,** | **Appellee.** |

### On appeal from the County Court at Law No. 4
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Memorandum Opinion by Justice Benavides**

In this interlocutory appeal from a denial of a special appearance, we conclude the appellant is subject to jurisdiction in Texas because he "did business" in the State, as the long-arm statute requires, and because exercising jurisdiction over him would not violate any traditional federal or state guarantees of due process. *See* Tex. Civ. Prac. & Rem.

CODE ANN. § 17.042 (Vernon Supp. 2007); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). We affirm.

## I. BACKGROUND

The appellant is a Connecticut resident named Ajmal Khan. He is the principal in a consulting business called Global Technologies & Resources ("Global"). In August or September of 2002, Khan met the appellee, Lal Murjani Rewachand, at a trade show in Chicago, Illinois called the Plastic Machinery Expo. Rewachand is a Texas resident who owns a business in Pharr, Texas called Petco International ("Petco"). Petco manufactures glass bottles for water, nail polish, and perfume, among other things.

At the Expo, Rewachand first noticed Khan, along with a man named Jurgen Kukzycki, demonstrating the use of a glass-blowing machine that Rewachand thought might be useful in his manufacturing business. The machine was manufactured by a German company called Spilles Maschinenbau GmbH ("Spilles"). According to Rewachand, Khan said that he was demonstrating the machine's features as a representative of Spilles. Khan denies that he is "a principal or agent" of Spilles, and he instead claims that he was manning the company's booth at the Expo as a favor to a friend.

When Rewachand returned to Texas, he kept in contact with Khan via telephone and e-mail. On November 21, 2002, Rewachand paid for Khan to fly to Texas and for a three-night stay at a McAllen hotel. While in Texas, Khan visited Rewachand's warehouse in Pharr, and Rewachand outlined the specifications that he needed for a new glass-blowing machine. Khan assured Rewachand that Spilles was trustworthy and would provide him with a reliable machine.

2

Rewachand agreed to buy a machine from Spilles for $120,000, paying $60,000 immediately and the balance over the course of the next year. The contract was signed in Pharr. Khan asked Rewachand to wire $60,000, the down payment for the machine, to Spilles. At some point, Rewachand expressed concerns about dealing with a German company because "issues" might arise. Khan assured him, however, that all dealings would be through Khan and Global Technologies. He withdrew his request that Khan wire the money to Spilles, and instead, he asked Rewachand to transfer the funds to the account of Global.[1]

When the machine arrived in Texas, a technician from Spilles also arrived to install the machine and to train Rewachand's employees. Rewachand, however, began having problems with the machine. He complained to Khan, but Khan referred him directly to Spilles. Rewachand protested that this was not their agreement and that his understanding was that Khan himself would address any problems that arose. Khan ignored his pleas. Two years after having the machine installed, and with a $65,000 balance left to be paid on the machine, Rewachand filed suit against Khan and Global for breach of contract, fraud, and breach of fiduciary duties.

Khan filed a special appearance in the trial court, asserting that as a Connecticut resident who had never "done business" in Texas, he was not amenable to the jurisdiction of the Texas courts. The trial court denied his special appearance, and he now seeks review through this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7)

---

[1] In his affidavit, Khan agrees to this verison of events, albeit with some vagueness. He stated: "Plaintiff contracted with the German company and sent funds to the German company *through a bank account in Connecticut*. I am not a principal or agent of the German company and received no funds or profit from the transaction." (emphasis added.). Presumably, the bank account in Connecticut is Global's, and Khan, as Global's principal, exercises some control over it.

3

(Vernon Supp. 2007).

## II. STANDARD OF REVIEW

When a Texas plaintiff sues a non-resident defendant, the plaintiff initially bears the burden of pleading allegations sufficient to demonstrate the Texas court's jurisdiction. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). Next, the burden shifts to the non-resident defendant to negate all jurisdictional bases. *Id.*

We review a trial court's denial of a special appearance de novo because personal jurisdiction is a question of law. *Id.* at 794. We recognize, however, that the trial court frequently must often resolve fact disputes before it reaches the jurisdictional question, and we review these findings for legal and factual sufficiency. *Id.* A finding is legally insufficient if the record reflects: (1) a complete absence of evidence of vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). A finding is factually sufficient unless it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

## III. ANALYSIS

A Texas court may exercise personal jurisdiction over a non-resident defendant if: (1) it is authorized to do so by the Texas "long-arm" statute, which permits jurisdiction over a person who "does business" in Texas; and (2) the exercise of jurisdiction comports with traditional state and federal guarantees of due process. *Moki Mac*, 221 S.W.3d at 574.

4

We believe the trial court's conclusion that Khan is subject to jurisdiction under this test are supported by legally and factually sufficient evidence.

## A. "Doing Business" Under the Long-Arm Statute

The Texas long-arm statute authorizes jurisdiction over a non-resident defendant who "does business" in the State of Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042.[2] The statute provides, in part, that a non-resident does business in Texas if he "commits a tort in whole or in part this state." *Id.* An allegation that a tort was committed in Texas is sufficient to satisfy this statute. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788 (Tex. 2005); *Pessina v. Rosson*, 77 S.W.3d 293, 298 (Tex. App.–Austin 2001, pet. denied).

The facts in this case are comparable to those in *Pessina. See Pessina*, 77 S.W.3d at 297. Pessina, a resident of the Principality of Monaco, traveled to Texas in order to facilitate business dealings between a Texas corporation and an English corporation. *Id.* When the Texas corporation filed for bankruptcy after the business dealings went awry, it sued Pessina for alleged misrepresentations. *Id.* at 297. Pessina filed a special appearance arguing that he was merely a representative of the English corporation, and therefore, he was protected from the suit. *Id.* at 299. The court of appeals found that Pessina was subject to Texas jurisdiction under the Texas long-arm statute, however,

---

[2] The long-arm statute provides that a nonresident "does business" in Texas if he:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; (2) commits a tort in whole or in part in this state; or (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon Supp. 2007)

because the plaintiff had pleaded allegations of misrepresentation against Pessina in his individual capacity:

> [The] affidavit asserts that Pessina *acted in his personal capacity by negotiating for a personal interest* in a future business venture and offering to invest personal funds . . . . This case is therefore distinguishable from two of the main cases Pessina relies upon for the contention that he is protected from personal jurisdiction by the fiduciary shield doctrine.

*Id.* at 300 (emphasis added).

In this case, Rewachand has pleaded and alleged in his affidavit that Khan negotiated for a personal interest by instructing Rewachand to wire his payment to a Connecticut account controlled by Khan, rather than to Spilles's bank account. Rewachand also alleged that Khan traveled to Texas and made a misrepresentation, thereby commiting a tort in Texas. These allegations alone easily meet Rewachand's burden to plead allegations that bring Khan under the long-arm statute. *See Michiana*, 168 S.W.3d at 788.

**B. Traditional Federal and State Due Process Guarantees**

"Allegations that a tort was committed in Texas satisfy the Texas Long-Arm Statute, but not necessarily the U.S. Constitution." *Id.* We must also ensure that subjecting Khan to Texas jurisdiction does not implicate either state or federal due process guarantees. *Moki Mac*, 221 S.W.3d at 574. Specifically, we must conclude that Khan has established minimum contacts with Texas and that the exercise of jurisdiction over him comports with traditional notions of fair play and substantial justice. *See BMC Software*, 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). We believe that both of these tests are satisfied.

6

### 1. Minimum Contacts

The minimum contacts necessary to establish personal jurisdiction exist when the nonresident defendant "'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Michiana*, 168 S.W.3d at 784 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). There are three parts to a "purposeful availment" inquiry. *Id.* at 784-85. First, only the individual defendant's contacts with the forum state, not the unilateral activity of another party or a third person, are relevant to the inquiry. *Id.* Second, the contacts relied upon must not be "random, fortuitous, or attenuated"; they must be purposeful. *Id.* Finally, the "defendant must seek some benefit, advantage or profit by 'availing' itself of the jurisdiction." *Id.*

The non-resident defendant's minimum contacts can either be "specific" or "general." *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 167 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Specific jurisdiction exists when the plaintiff's cause of action arises out of or is related to the defendant's contacts with the forum, whereas general jurisdiction exists where the defendant's contacts in a forum are continuous and systematic such that jurisdiction may be exercised even if the cause of action does not arise from or relate to activities conducted within the forum state. *PHC-Minden*, 235 S.W.3d at 167. In this case, we believe Khan's contacts with Texas are sufficient to establish specific jurisdiction because his trip to Texas constituted a purposeful availment of the Texas laws.

First, we note that we are examining only Khan's unilateral contacts with Texas—namely, his trip to the state to meet with Rewachand and his negotiation and

7

signing of a contract in the state. Considering only this unilateral contact, the contact between Khan and Texas is certainly purposeful—not random, fortuitous, or attenuated. This is because a person who "'reach[es] out beyond one state and create[s] continuing relationships and obligations with citizens of another state' [is] subject to the jurisdiction of the latter in suits based on their activities." *Michiana*, 168 S.W.3d at 785 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)). Here, the only "random" contact Khan had with Texas was that, by happenstance, he met a Texas resident, Rewachand, in Chicago. From that point forward, all contacts were purposeful. Khan chose to maintain a professional relationship with Rewarchand via phone and e-mail; he chose to visit Texas and tour Rewachand's factory facilities; he chose to negotiate the final terms of a contract in Texas; and he chose to sign the contract in Texas.[3]

Finally, we note that Khan purposefully availed himself of Texas law by virtue of his business trip here. Nonresidents "may purposefully avoid a particular jurisdiction by structuring . . . transactions so as neither to profit from the forum's laws nor be subject to its jurisdiction." *Michiana*, 168 S.W.3d at 785. Khan took no such measures in this case. Although we do not believe this contact is continuous and extensive enough to support a finding of general jurisdiction, it is certainly sufficient for the standards of specific jurisdiction. *See PHC-Minden*, 235 S.W.3d at 167.

---

[3] The Houston Court of Appeals has held that "negotiating and signing a contract in Texas is insufficient" to support jurisdiction, but only "if performance takes place elsewhere." *Moni Pulo, Ltd. v. Trutec Oil & Gas, Inc.*, 130 S.W.3d 170, 175 (Tex. App.–Houston [14th Dist.] 2003, pet. denied). In this case, performance took place substantially in Texas, where the machine was shipped and installed, and from where Rewachand wired his payment.

8

**2. Traditional Notions of Fair Play and Substantial Justice**

Finally, having found that Khan has minimum contacts with the State of Texas, we must decide whether subjecting him to jurisdiction here would violate "traditional norms of fair play and substantial justice." *See Moki Mac*, 221 S.W.3d at 574. When evaluating whether traditional notions of fair play and substantial justice are implicated by a state's exercise of jurisdiction over a nonresident defendant, courts look to the following factors: (1) the burden on the non-resident to litigate in a different forum; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of disputes; and (5) the shared interest of the respective states furthering substantive social policies. *Id.*

When we view the facts of the instant case through the prism of these five factors, we are unable to see how traditional norms of fair play and substantial justice are violated by subjecting Khan to jurisdiction in Texas. First, although it may be somewhat burdensome for Khan to litigate in Texas (rather than Illinois or Connecticut), the burden is outweighed by the fact that all of the relevant actions underlying the claims took place in Texas, and therefore, the majority of the documents and witnesses necessary for trial are most likely in Texas also. *See Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 233 (Tex. 1991). The ease of accessability and transportation of such evidence is commonly considered when analyzing the burden upon a non-resident of litigating in a different forum. *See, e.g., Transportadora Egoba S.A. de C.V. v. Arredondo*, 217 S.W.3d 603, 610 (Tex. App.–San Antonio 2006, pet. denied);

*Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 683 (Tex. App.–Fort Worth 2001, no pet.); *De Prins v. Van Damme*, 953 S.W.2d 7, 16 (Tex. App.–Tyler 1997, pet. denied). Thus, in this case, "the interests of the forum state and the plaintiff will justify the severe burden placed upon the nonresident defendant." *Guardian Royal*, 815 S.W.2d at 233.

The second and third factors—the interests of Texas and of Rewachand—also favor jurisdiction in Texas. Texas has a clear interest in adjudicating the dispute because the claim was filed by a Texas resident and it involves alleged tortious acts which took place in Texas. *See Pessina*, 77 S.W.3d at 299; *see also Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 810 (Tex. 2002); *Guardian Royal*, 815 S.W.2d at 233. Rewachand has an interest in seeing the case resolved in Texas because he is a Texas resident and his company is in Texas. *See Pessina*, 77 S.W.3d at 299.

Fourth, the interests of the interstate judicial system indicate that Texas is the proper forum. Among the three states involved in this case—Texas, Illinois, and Connecticut—Texas stands out as the actual site of virtually all the activity. Illinois is merely the place where the parties met, and Connecticut is merely where the defendant resides. The claims, however, are based on misrepresentations which were allegedly committed in Texas, and on the breach of a contract that was negotiated, signed, and substantially performed in Texas. *See id.*; *see also Gonzalez v. Lehtinen*, No. 13-06-441-CV, 2008 Tex. App. LEXIS 1889, at *28 (Tex. App.–Corpus Christi Mar. 13, 2008, no pet. h.) (mem. op.).

These same reasons also relate to the fifth element—the shared interest of the respective states furthering substantive social policies. Khan does not contend—nor can

10

we imagine any reasonable contention—that "the procedural and substantive policies of other nations or the federal government's foreign relations policies will be affected by the exercise of personal jurisdiction over him." *Pessina*, 77 S.W.3d at 299.

Khan has the minimum contacts with Texas to be subject to specific jurisdiction, and no traditional notions of fair play and substantial justice are violated by the exercise of jurisdiction.

## IV. FIDUCIARY SHIELD DOCTRINE DOES NOT APPLY

Finally, although Khan adamantly asserts in his affidavit that he is not an agent of Spilles, he concedes his actions on behalf of Spilles ("favors," as he terms it) may lead us to conclude that a de facto agency relationship existed. If so, he argues he is protected by the fiduciary shield doctrine, under which corporate agents generally "are not subject to personal jurisdiction in Texas merely because their employer does business in this state." *Cerbone v. Farb*, 225 S.W.3d 764, 769 (Tex. App.–Houston [14th Dist.] 2007, no pet.); *see also Corella v. Magnuson*, No. 13-07-439-CV, 2008 Tex. App. LEXIS 1099, at *6 n.2 (Tex. App.–Corpus Christi Feb. 14, 2008, no pet.) (mem. op.).

The fiduciary shield doctrine does not apply in this case, however, because it does not protect an employee from specific personal jurisdiction as to intentional torts or fraudulent acts for which he may be held individually liable. *Cerbone*, 225 S.W.3d at 769; *Morris v. Kohls-York*, 164 S.W.3d 686, 697 (Tex. App.–Austin 2005, pet. dism'd); *Morris v. Powell*, 150 S.W.3d 212, 218-19 (Tex. App.–San Antonio 2004, pet. dism'd); *SITQ E.U., Inc. v. Reata Rests. Inc.*, 111 S.W.3d 638, 651 (Tex. App.–Fort Worth 2003, pet. dism'd); *see also Capital Pac., L.L.C. v. Humble Garden, L.L.C.*, No. 01-05-00469-CV, 2005 Tex.

11

App. LEXIS 9158, at *20 (Tex. App.–Houston [1st Dist.] Nov. 3, 2005, no pet.) (mem. op.) ("It is well settled that a corporate agent can be held individually liable for fraudulent statements or knowing misrepresentations even when the agent makes them in the capacity of a corporate representative."); *Morris v. Schilling*, No. 13-04-00175-CV, 2005 Tex. App. LEXIS 7095, at *18 (Tex. App.–Corpus Christi Aug. 30, 2005, pet. dism'd) (mem. op.).[4]

## V. Conclusion

We conclude the defendant is subject to jurisdiction in Texas because he "did business" in the State as the long-arm statute requires, and because exercising jurisdiction over him would not violate any traditional federal or state guarantees of due process. Accordingly, we affirm the trial court's denial of special appearance.

_____
GINA M. BENAVIDES,
Justice

Memorandum Opinion delivered and
filed this the 29th day of May, 2008.

---

[4] We note that the facts in this case are distinguishable from those in a memorandum opinion we recently issued in which we found the fiduciary shield doctrine applicable. *See Tang v. Garcia*, No. 13-06-00367-CV, 2007 Tex. App. LEXIS 6148, at *13-16 (Tex. App.–Corpus Christi August 2, 2007, pet. denied) (mem. op.). In *Tang*, the resident plaintiffs, in their pleadings, specifically referred to the nonresident defendants as the "agents" of the company in question. *Id.* at *14 ("According to Garcia's counterclaim 'Tang and/or Haigney *were the agents for...Burlington.*'") (emphasis in original). In so doing, the *Tang* plaintiffs waived the argument that the fiduciary shield doctrine was inapplicable. The facts in the instant case are quite different. Rewachand, in his pleadings, did not assert that Khan was a Spilles agent; he accused Khan of misrepresenting himself as a Spilles agent. In other words, Rewachand couched his pleadings in terms of individual—not representative—liability. *See also Corella v. Magnuson*, No. 13-07-439-CV, 2008 Tex. App. LEXIS 1099, at *5-6 n.2 (Tex. App.–Corpus Christi Feb. 14, 2008, no pet.) (mem. op.) (distinguishing Tang as a case in which "the plaintiffs chose to couch their jurisdictional allegations only in fiduciary or representative terms and did not plead any facts raising individual liability against the nonresident defendants").