# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

<hr>

## NO. 03-06-00414-CV

<hr>

**Martin Doane, Appellant**

**v.**

**Thomas F. Cooke, Appellee**

<hr>

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT**
**NO. D-1-GN-05-003341, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**

<hr>

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, appellant Martin Doane challenges the trial court's overruling of his special appearance. Appellee Thomas Cooke sued Doane and two other defendants[1] for fraud, intentional and negligent misrepresentation, and failure to disclose material information. We affirm the trial court's order denying Doane's special appearance.

### Factual Background

Cooke is a Texas resident who was the half-owner of Austin Acquisition Development Corp. ("AADC"); he was also its chief executive officer. Doane is a Canadian attorney who acted as an agent for Optima Services International, Ltd. in relation to an escrow

<hr>

[1] Cooke also sued James Spence, another Canadian lawyer involved in the negotiations, and Aylesworth L.L.P., a Canadian law firm. The trial court granted special appearances filed by Spence and Aylesworth, and this appeal concerns only the court's overruling of Doane's special appearance.

agreement between Cooke and Optima. The underlying transaction for which the parties arranged the escrow agreement was a stock purchase agreement under which Optima agreed to buy 500 shares of AADC from Cooke in exchange for CND$530,000 in cash and a promissory note for CND$1,120,000. The note was payable in two CND$560,000 installments to be paid April 1, 2005, and July 1, 2005. To secure the note, Optima agreed to place with an escrow agent 1.4 million common shares it owned in Trinity Plumas Capital Corp. along with a "medallion signature guarantee" for the certificate.[2] Negotiations took about six months, and the deal was finalized in November 2004. During negotiations, Cooke was in Texas and Optima and its agents were in Canada. Cooke testified:

> I was not familiar with what a medallion signature guarantee . . . was. But when we got into the negotiation relative to what was going to be necessary for me to transfer the stock into my name, Optima said through Doane or Doane said individually or Spence or all three of them were telling me that it was going to just drag out the transaction too long to be able to transfer the stock certificate into my name. So they—so we researched the—what was going to be necessary in the event that I had to take possession of the stock to get it registered in my name through the transfer agent . . . . And it was pointed out to us that the medallion signature guarantee was critical to that process in the event that I did end up with that certificate.

On or about November 15, 2004, the parties closed on the deal by telephone. The transaction was comprised of four documents: a purchase agreement, a promissory note, an escrow

---

[2] A medallion signature guarantee is a signature guarantee issued by a financial institution that participates in one of three "Medallion signature guarantee programs." A participating financial institution guarantees a customer's signature "with the assurance that their guarantees will be immediately accepted for processing by transfer agents." Signature guarantees issued by non-medallion institutions may be refused by transfer agents. United States Securities & Exchange Commission, *Signature Guarantees: Preventing the Unauthorized Transfer of Securities*, available at http://www.sec.gov/answers/sigguar.htm.

agreement, and a mutual release. Cooke signed the purchase agreement and the escrow agreement in his individual capacity, and Doane signed the purchase agreement, escrow agreement, and promissory note as vice-president and secretary of Optima. The purchase agreement, promissory note, and escrow agreement all provided that Texas law would govern the agreements and that any disputes arising under the agreements would be resolved in Travis County. The escrow agreement states that under the terms of the purchase agreement, "Optima will deliver to the Escrow Agent 1.4 million shares of [Trinity Plumas] stock . . . and a fully executed blank stock power of attorney and assignment form together with a medallion guaranty of signature . . . to be held by Escrow Agent in accordance with the terms hereof." Cooke testified, "I would never have entered into the agreement without a medallion signature guarantee. . . . It was a cornerstone to the agreement."

On December 30, 2004, Spence's assistant sent the escrow agent a "transmittal letter," which stated that enclosed with the letter were a certificate for 1.4 million shares of Trinity Plumas stock and a "blank stock power of attorney with medallion signature guarantee by HSBD Bank Canada" for the shares, copying Cooke on the letter. However, the escrow agent received a signature guarantee, not the promised medallion signature guarantee.[3] Optima defaulted, and Cooke learned that the escrow agent had never received the medallion signature guarantee. When Cooke tried to exercise his rights to the stock, Doane refused to provide a medallion signature guarantee. Cooke testified that before filing this suit, he had been forced to bring two other lawsuits against the escrow agent and the Canadian transfer agent to get the stock certificate released and transferred into his

_____

[3] Attached to the stock certificate and sent with Spence's December 30 letter is a document signed by Doane as vice-president and secretary of Optima that recites that "the undersigned hereby sells, assigns and transfers" 1.4 million shares of Trinity Plumas stock.

3

name. Cooke asked Doane for the medallion signature guarantee before and after those suits, but Doane refused. Cooke also testified that Doane said he would "fight the transfer agent" when Cooke sought to have the stock transferred into his name.

On September 15, 2005, Cook filed this suit against the Aylesworth law firm, Spence, and Doane, suing both attorneys in their individual capacities. Cooke's petition alleged that the defendants misrepresented to him and the escrow agent "that the escrow deposit consisted of a fully executed blank stock power of attorney and assignment form guaranteed by a medallion signature guarantee." Cooke alleged that the defendants committed fraud, intentional and negligent misrepresentation, and failure to disclose material information, all related to their failure to include the medallion signature guarantee as promised. Each defendant filed a special appearance.

At the hearing on the special appearances, Cooke testified that he and his agents relied on Spence's statement in his December 30 transmittal letter that the medallion signature guarantee had been delivered to the escrow agent. Asked what relationship Spence and Doane had to the law firm, Cooke answered, "I believe they were [partners or associates up until November or December 2004]. I am not sure exactly. I mean, like I said, it was kind of a moving target." He went on to say that Doane and Spence "were wearing two hats. It was kind of hard to discern what their roles were. In fact, Mr. Doane started off as an independent counsel and then he became an officer and director of the—of Optima International Trust." Cooke did not know when in late 2004 Doane switched from being employed as an attorney with Aylesworth to an executive at Optima. From Cooke's testimony, it seems that most of his negotiations were with Spence, who prepared the documents and stated in his December 2004 letter that the medallion signature guarantee was

4

included. However, Cooke also testified that he spoke to Doane during the negotiations and, when asked whether "Doane represented to you that a medallion guarantee signature would be provided," Cooke answered, "Yes."

Doane did not present evidence except for his affidavit in which he stated that he had no contacts, had not committed any torts or entered into contracts, and did not own property or conduct business in Texas. Doane averred, "My communications with Mr. Cooke were done in my capacity as an attorney and/or an agent of Optima Services International, Ltd. None of my dealings with Mr. Cooke were in my individual capacity."

After the hearing, the trial court sustained Spence's and Aylesworth's special appearances, dismissing Cooke's claims against those defendants. The court overruled Doane's special appearance. Doane did not request and the court did not make findings of fact or conclusions of law. It is from the order overruling his special appearance that Doane appeals.

**Standard of Review**

A Texas court may exercise personal jurisdiction over a nonresident if exercise of jurisdiction is authorized by the Texas long-arm statute and comports with constitutional due process guarantees. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990). The plaintiff has the burden of pleading allegations sufficient to satisfy Texas's long-arm statute. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). If the plaintiff satisfies that initial burden, the burden then shifts to the defendant to affirmatively negate the asserted jurisdictional bases. *See id.* The long-arm statute allows a court to exercise jurisdiction over a nonresident who does business in Texas, and committing a tort in Texas constitutes doing business in the state. Tex. Civ.

5

Prac. & Rem. Code Ann. § 17.042 (West 2008). The long-arm statute reaches as far as the federal Constitution permits and, therefore, our analysis is consistent with the federal test. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

Personal jurisdiction may arise through general jurisdiction or, as Cooke asserts, specific jurisdiction, which requires that the defendant's acts in Texas relate to the cause of action. *See Schlobohm*, 784 S.W.2d at 358. Thus, a nonresident may be subject to specific jurisdiction in Texas if (1) he purposefully does an act or consummates a transaction in Texas, thus establishing minimum contacts; (2) the act or transaction is connected to or gives rise to the cause of action; and (3) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Id.* Specific jurisdiction requires a substantial connection between Texas, the lawsuit, and the defendant, and we focus not on where the injury was felt, but on the defendant's actions in Texas. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 789-90 (Tex. 2005).

We review de novo a trial court's decision on a special appearance. *Marchand*, 83 S.W.3d at 794. In making its jurisdictional determination, the trial court must resolve necessary factual questions, and when a trial court does not issue findings of fact, we assume the court made all necessary findings of fact that are supported by the evidence. *Id.* at 794-95. However, "[w]hen the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency." *Id.* at 795. Evidence is legally sufficient if "there is more than a scintilla of evidence to support the finding," *id.*, and it is factually insufficient only if, in light of the entire record, a finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Ennis v. Loiseau*,

6

164 S.W.3d 698, 706 (Tex. App.—Austin 2005, no pet.). The trial court is the sole judge of witness credibility and the weight to be given to testimony, and we "will not disturb a trial court's resolution of conflicting evidence that turns on the credibility or weight of the evidence." *Id*.

## Discussion

Cooke satisfied his initial burden, pleading sufficient allegations to come within the Texas long-arm statute when he alleged that Doane committed fraud, misrepresentation, and failure to disclose during his negotiations with a Texas resident. *See Marchand*, 83 S.W.3d at 793. His claims are based on his allegations that Doane knowingly and falsely represented to Cooke that he and the other defendants would provide and had provided the required medallion signature guarantee in compliance with the various agreements. Cooke further alleged that Doane knew that Cooke would not have entered into the agreement without a medallion signature guarantee and represented "that the Blank Stock Power of Attorney was guaranteed by a medallion signature guarantee when it was not." Because Cooke met his burden of making jurisdiction allegations as to all three claims, the burden shifted to Doane to negate all asserted jurisdictional bases.

Because the trial court did not make findings of fact, we must assume that it made all findings necessary to support its decision to overrule Doane's special appearance. *See id.* at 795. To hold Doane amenable to jurisdiction in Texas, the trial court must have determined that he purposefully did an act or consummated a transaction in Texas that was connected to Cooke's cause of action and that the exercise of jurisdiction over Doane would not offend traditional notions of fair play and substantial justice. *See Schlobohm*, 784 S.W.2d at 358.

7

A nonresident who acts in an official capacity on behalf of a corporation may be subject to specific jurisdiction if he engaged in tortious or fraudulent conduct, directed at Texas, for which he may be held personally liable. *Ennis*, 164 S.W.3d at 707. This is because a "corporate officer is primarily liable for his own torts." *Morris v. Powell*, 150 S.W.3d 212, 221 (Tex. App.—San Antonio 2004, no pet.) (specific jurisdiction proper when plaintiff alleged negligence, fraud, and negligent misrepresentation in corporate duties). If a corporate officer had "direct, personal participation in the wrongdoing" and was central to the wrongful corporate activity, he may not escape liability. *Ennis*, 164 S.W.3d at 707 (quoting *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cir. 1985)). "It is the general rule in Texas that corporate agents are individually liable for fraudulent or tortious acts committed while in the service of their corporation," *Shapolsky v. Brewton*, 56 S.W.3d 120, 133 (Tex. App.—Houston [14th Dist.] 2001, pet. denied), and a corporate officer need not have committed an intentional tort to be haled into Texas courts. *Ennis*, 164 S.W.3d at 708. Instead, the plaintiff "must establish that the officer committed fraudulent or tortious acts for which he may be held individually liable." *Id*. In other words, a corporate officer's "status as [an] employee[] does not somehow insulate [him] from jurisdiction," *Calder v. Jones*, 465 U.S. 783, 790 (1984), and will not grant him "blanket protection from jurisdiction simply because [his] alleged acts were done in a corporate capacity," *SITQ E.U., Inc. v. Reata Rests., Inc.*, 111 S.W.3d 638, 651 (Tex. App.—Fort Worth 2003, pet. denied).

We are not asked to determine whether Doane will ultimately be held liable on Cooke's claims. Our inquiry is whether Cooke "sufficiently established facts suggesting that [Doane] should have anticipated being haled into a Texas court based on his actions." *See Ennis*,

8

164 S.W.3d at 708-09. "Hence, if the evidence suggests that the nonresident officer participated in tortious or fraudulent activities, which were directed at Texas and for which he may be held personally liable," there may be sufficient grounds to exercise specific jurisdiction over him. *See id*. at 709.

Cooke alleged and testified that Doane, along with others, participated in negotiations with Cooke, a Texas resident, over about six months, arranging for Cooke to sell shares in a Texas corporation to Optima, a foreign corporation, in exchange for certain sums. Cooke alleged and testified that Doane himself promised that Optima's payments would be secured by a certificate for 1.4 million Trinity Plumas shares and that Optima would provide a medallion signature guarantee to ease the stock transfer in the event of Optima's default. Cooke testified that he would not have agreed to the transaction but for the promised medallion signature guarantee and that Doane later refused repeated requests for the guarantee and told Cooke that he would fight the transfer of the stock into Cooke's name. Doane signed documents that stated that the medallion signature guarantee would be attached to the stock certificate, and those documents included clauses subjecting the agreement and any disputes to Texas law and venue in Travis County. The actions of which Cooke complains—Doane's alleged misrepresentations that the medallion signature guarantee would be provided to the escrow agent along with the stock certificate—were certainly directed at Texas and connected to Cooke's causes of action, all of which rely on alleged misrepresentations that the medallion signature guarantee would be provided.[4] *See id*. at 708-09. Further, if Cooke's testimony

[4] Fraud is the false representation of a material fact, made intentionally or recklessly by the defendant, intended to be and actually relied on by the plaintiff to his detriment. *Formosa Plastics Corp. USA v. Presidio Engrs. & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). "A promise of

is credible, as the trial court impliedly found by its denial of Doane's special appearance, Doane's conduct was tortious and fraudulent, and he could be held personally liable for that conduct despite it having been done in his official capacity.[5]

We recognize that the supreme court has placed limits on the exercise of jurisdiction when an actor "directs" a tort at Texas and that it has held that the commission of a "tort in a telephone call" to Texas does not "necessarily establish[]" specific jurisdiction. *See Michiana Easy Livin' Country*, 168 S.W.3d at 789-92 (noting that court had "expressly rejected jurisdiction 'based solely upon the effects or consequences of an alleged conspiracy'" in Texas) (quoting *National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995)). However, the acts of

---

future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made." *Id.* at 48. Negligent misrepresentation occurs if in the course of business in which he has a pecuniary interest, a defendant gives false information for a plaintiff's guidance, without exercising reasonable care or competence in obtaining or providing the information, on which the plaintiff justifiably relies and suffers a resulting pecuniary loss. *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). Finally, fraudulent nondisclosure occurs when the defendant fails to disclose a fact he knows may justifiably induce the plaintiff to act in a business transaction if he owed the plaintiff a duty of reasonable care. *See Ralston Purina Co. v. McKendrick*, 850 S.W.2d 629, 633-36 (Tex. App.—San Antonio 1993, writ denied).

[5] Doane's affidavit states that he is a Canadian attorney; he has not entered into any contracts or committed any torts in Texas; he has conducted no business, has no contacts, and owns no property in Texas; and all of his communications with Cooke were in his role as attorney or agent for Optima, not his individual capacity. His statements about his contacts with Cooke and that he had not committed a tort in Texas do not refer to supporting facts or discuss what knowledge or intent he had about the medallion guarantee when he made the various representations. The affidavit provides no factual support for his statements about his contacts with Cooke or that he had not committed a tort. Instead, it merely states Doane's legal conclusions about the capacity in which he acted and that his acts not tortious in nature. Those bare averments are conclusory and not competent affidavit evidence. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *FNFS, Ltd. v. Security St. Bank & Trust*, 63 S.W.3d 546, 550 (Tex. App.—Austin 2001, pet. denied); *Domel v. City of Georgetown*, 6 S.W.3d 349, 355-56 (Tex. App.—Austin 1999, pet. denied).

10

which Cooke complains—Doane's alleged misrepresentations related to the inclusion of a medallion signature guarantee—were repeated, directed at Texas, and made in the course of buying shares in a Texas company owned by at least one Texas citizen, a contract which the parties agreed would be controlled by Texas law. *See id.* at 789-90 (important factors are extent of defendant's activities and relationship of defendant, forum state, and litigation). We have considered the extent of Doane's alleged misdeeds, the nature of those acts, and the contractual relationship established with Texas, as well as the pleadings, Doane's special appearance arguments, and Cooke's testimony. We hold that the trial court did not err in determining that Doane purposefully directed sufficient actions at Texas through his negotiations with and representations to Cooke, that there is a nexus between Doane's alleged actions and Cooke's causes of action, and that the trial court's exercise of jurisdiction over Doane would not offend traditional notions of fair play and substantial justice.[6] *See Schlobohm*, 784 S.W.2d at 358.

### Conclusion

No matter whether Doane is ultimately held liable for his alleged conduct, Cooke's testimony and evidence at the special-appearance hearing suggests that Doane knowingly or, at the least, negligently misled Cooke into believing that Optima would provide and was providing Cooke with a medallion signature guarantee, which Cooke considered to be an essential part of the

---

[6] A nonresident seeking to avoid jurisdiction in Texas must present a "compelling case" to explain why litigation in Texas would be unduly burdensome. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Doane's affidavit states only that "[r]equiring me to defend an action in Texas would be a huge burden and cost."

11

transaction.  We therefore overrule Doane's sole point of error and affirm the trial court's order denying Doane's special appearance.

_____

David Puryear, Justice

Before Chief Justice Law and Justices Puryear and Henson

Affirmed

Filed:   November 14, 2008