PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 14, 2010
JOHN LEY
CLERK

No. 08-10848

D. C. Docket No. 07-00052-CV-T-30-MAP

CHRISTINE SAHYERS,
on behalf of herself and others similarly situated,

Plaintiff-Appellant-
Cross-Appellant,

versus

PRUGH, HOLLIDAY & KARATINOS, P.L.
a Florida Limited Liability Corporation,
TIMOTHY F. PRUGH,
JAMES W. HOLLIDAY, II,

Defendants-Appellees,

THEODORE E. KARATINOS,

Defendant-Appellee-
Cross-Appellant.

Appeal from the United States District Court
for the Middle District of Florida

(April 14, 2010)

Before DUBINA, Chief Judge, TJOFLAT, EDMONDSON, BIRCH, BLACK, CARNES, BARKETT, HULL, MARCUS, WILSON, PRYOR, and MARTIN, Circuit Judges.

B Y  T H E  C O U R T:

The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure), the Suggestion of Rehearing En Banc is **DENIED**.

Edmondson, Circuit Judge, concurring in denial of en banc rehearing:

Decisions on whether or not to grant en banc rehearing are not decisions on the merits of the appeal. As I understand it, the only judges of this Court who have had the merits of this case put before them for decision are the members of the panel who decided the case. Nevertheless, it, in the past dozen years or so, has become the fashion -- moving from the exceptional to the normal -- of our Court for some judges, who were not on the pertinent panel, to file dissents regularly when en banc rehearing is denied. The dissents almost always dwell on their view of the incorrectness of the merits decision by the panel. The writing of the dissents, the reading of the dissents, and the replying to the dissents all consume judicial time and energy that are limited commodities. I am not sure what the utility of this new practice is. For example, as near as I can tell, nothing indicates that dissents filed on denials of en banc rehearing make it more likely that the Supreme Court will grant certiorari in a case of our Court. Still, I do not question the power of my colleagues to file dissents in these circumstances; and I do appreciate that, at times, it feels good to say one's piece. (On en banc denials, I have dissented a time or two myself over the decades.) But I do wonder about the cost-benefit analysis on the whole for the law, for the Court, and for the Country of <u>regular</u> dissents to denials of en banc rehearing.

About this case, I have a few observations to make. Lawyers, as members of the Courts' Bars (that is, as officers of the Courts) are often, and in a variety of ways, treated by the Courts better or worse than nonlawyers. I stress that I do not see the Courts' inherent powers to supervise the members of their Bars as "overriding" (that is, cancelling) the FLSA statute's treatment of fees. The statute is law, general law tied to the *outcome* of FLSA suits.

I see the Courts' inherent powers over Bar members as a separate and pre-existing font of law and legal authority that specifically governs the *conduct* of lawyers as lawyers, regardless of the *outcome* of the case: the law of inherent powers supplements the FLSA statute to make up the whole of the applicable law in this case. Therefore, I see the whole applicable law to run this way: When the *outcome* favors the plaintiff, fees shall be awarded unless the District Court, in the reasonable exercise of its power to supervise lawyers in their practice in cases before the Court, determines that an award of fees (given the specific circumstances of a particular case) is not right -- not right directly because of lawyer *conduct* related to the specific case. Thus, fees nearly always are to be awarded; but never are the Courts altogether stripped of the power to supervise lawyer conduct through the grant or withholding of fees.

That Courts have the inherent and main -- if not exclusive -- authority (along with the duty and responsibility) to supervise their Bar members is, I believe, no innovative idea. And that Courts can use the control of attorney fees as a means of exercising the inherent power to supervise lawyer conduct in particular cases seems uninnovative too. See Chambers v. NASCO, Inc., 111 S. Ct. 2123, 2133 (1991) (court may per inherent power assess attorneys fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive purposes); Roadway Express, Inc. v. Piper, 100 S. Ct. 2455, 2463 (1980) (federal courts have inherent powers to assess attorneys fees against counsel).

The inherent powers to supervise lawyers are important to the Courts. I suggest that Courts ought to be highly reluctant to cede this traditional power dealing with control of lawyer conduct in respect to cases that come before the Courts: reluctant for practical reasons touching upon the best interest of the judicial system, Bar, and public as well as reluctant for important separation-of-powers reasons. But I do assume that Congress could abrogate the Courts' inherent power to control (that is, control by governing fee awards) lawyers' conduct, if Congress did so specifically, explicitly, and directly. Nevertheless, abrogation is not what has happened in the FLSA, as I understand it.

Congressional abrogation of traditional Court powers ought not to be lightly assumed. And I maintain it is by no means clear that Congress intended that the FLSA in any way interfere with the Courts' traditional supervisory powers over the course of litigation and over lawyer conduct, although Congress did intend for fees to be assessed against defendants ordinarily when the plaintiff obtains a winning outcome. I believe I am correct to say that Congressional abrogation of the Court's inherent power to supervise lawyer conduct must be clear and plain, before the Courts let that critical power get away. See Chambers, 111 S. Ct. 2134-36 (requiring a much clearer expression of purpose than the creation of an express rule on a similar subject for a court to assume Congress intended to abrogate inherent judicial power).

About this case in particular, I will not repeat everything that I set out in the panel opinion. People who are interested can check for themselves about what the panel said and did. The case is intensely fact specific. The appellate decision creates no procedural rule. The panel created no procedural rule requiring pre-suit notice in FLSA cases: even notices from suing lawyers to lawyers to be sued in their individual capacity. Nor do I understand the District Court to have created such a hard-edged rule even for lawyers suing lawyers, although the absence of any notice was obviously an important consideration in the fee determination,

6

particularly given all the circumstances (no looming statute of limitations, no concerns about a fleeing defendant, the local litigation customs among lawyers, the difficulty in determining what plaintiff claimed she was owed, the small settlement, and so on).

As the Preamble to the Rules Regulating the Florida Bar observes, a lawyer should demonstrate respect for other lawyers. Given that the defendants in this case were a law firm and lawyers sued individually by a plaintiff represented by a lawyer from the same local area, the District Court in this case was attempting to supervise its Bar and to protect civility and respect among the area's lawyers. The District Judge specifically tied his decision to the local practices: "prior to filing suit in this local area, it is still reasonable to pick up the phone and call another lawyer so it won't be necessary to file suit." Other district judges in other areas of our Circuit may have different views based upon different local circumstances. Please recall that, even under Rule 11 (another kind of lawyer-conduct regulation), the district judge's knowledge of the "local bar's litigation practices" is considered an important reason for giving district judges much leeway on matters of sanctions. See Cooter & Gell v. Hartmarx Corp., 110 S. Ct. 2447, 2460 (1990).

While I promised that I would not repeat everything I said in the panel opinion, I will end by repeating footnote 5 from the panel opinion: "We believe

7

and defend the idea that maintaining a bar that promotes civility and collegiality is *in the public interest* and greatly advances judicial efficiency: better 'to secure the just, speedy and inexpensive determination of every action and proceeding,' as Rule 1 demands. For background, see Fed. R. Civ. P. 1."

BARKETT, Circuit Judge, dissenting:

En banc review is warranted in this case because district courts do not have the power, inherent or otherwise, to directly contravene a federal statute. The panel decision, holding that the district court could deny attorneys' fees mandated by the Fair Labor Standards Act ("FLSA"), is contrary to settled United States Supreme Court precedent providing that the use of a district court's inherent supervisory powers is invalid when it conflicts with a statutory command. See, e.g. Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988); Thomas v. Arn, 474 U.S. 140, 148 (1985). As Judge Wilson notes in his dissent, there is no dispute that the language of the statute is mandatory, see 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."), and has been previously so construed by our court. Dale v. Comcast Corp., 498 F.3d 1216, 1223 n.12 (11th Cir. 2007).

The panel characterizes the denial of attorneys' fees as an informal sanction of Sahyers' lawyer for suing fellow lawyers without first attempting to resolve the dispute through informal means. In his concurrence to the denial of rehearing, Judge Edmondson stresses that the district court based its decision on local litigation customs and practices, but the district court opinion references no such

9

customs or practices. The district court simply says that, in _its_ view, it is "reasonable" to call another lawyer prior to filing suit. That is not enough to give notice to Sahyers' attorney. District courts do not have the authority to sanction lawyers for conduct not proscribed by law or rule - which is the case here - without first providing them with notice that their conduct may warrant sanctions. Fed. R. Civ. P. 83(b) ("No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement."). Because Sahyers' attorney was given no _actual notice_, the district court had no authority to sanction him for failing to contact the defendants or their lawyers before filing suit. See In re Mroz, 65 F.3d 1567, 1575 (11th Cir. 1995) ("Due process requires that the attorney (or party) be given fair notice that his conduct may warrant sanctions and the reasons why." (citation omitted)). Accordingly, there is no authority for disregarding the mandatory language of FLSA on this basis.

The panel's only supporting authority for its contention that a court may deny an award of litigation expenses to which a client is otherwise entitled by law is Litton Syss., Inc. v. Am. Tel. & Tel. Co., 700 F.2d 785 (2d Cir. 1983). However, that decision does not permit a district court to simply disregard the

10

express language of a statute that mandates attorneys' fees and costs. Rather, it affirms a sanction imposed under Federal Rule of Civil Procedure 37 for "gross negligence" and "willful misconduct" by the plaintiff's lawyers. Id. at 826-28. The failure to notify an opposing lawyer prior to suit in the absence of any known requirement to do so can hardly qualify as negligence or willful misconduct.

Because the panel opinion disregards the express mandate of Congress, this case warrants en banc review.

WILSON, Circuit Judge, dissenting:

The Court affirms a decision by a district court that denies a prevailing plaintiff's lawyer his entitlement to an attorney's fee under the Fair Labor Standards Act ("FLSA") on account of his failure to give the defendant, a lawyer, advance notice of the lawsuit. I am concerned about the precedent this case sets. First, an award of attorneys' fees to a prevailing party is mandatory under the FLSA. Second, I have found no authority that requires plaintiff's counsel to provide pre-suit notice when another lawyer is the defendant. Although well-intentioned, I doubt that the federal courts have the inherent authority to ignore and override a statutory mandate in the interest of promoting a professional courtesy. I also do not believe that Congress intended to single out lawyers for exclusive treatment under the FLSA. Since it is now within the inherent authority and discretion of the district courts in our Circuit to hold that no attorney's fee is a reasonable fee when no pre-suit notice is extended to defendants who are lawyers, I would consider this case en banc before permitting this new Circuit precedent to stand.

The facts are these. Plaintiff Christine Sahyers worked as a paralegal for the defendant law firm Prugh, Holliday & Karatinos, P.L. On January 9, 2007, Sahyers filed a lawsuit against her former employer and its three owners and

12

principals, Timothy F. Prugh, James W. Holliday, II, and Theodore Karatinos (collectively the "defendants"), pursuant to the FLSA to recover unpaid overtime compensation. The defendants filed an answer, denying liability. The case proceeded to discovery, and less than one month after a failed court-ordered mediation, the plaintiff accepted an offer of judgment pursuant to Federal Rule of Civil Procedure 68. The next day, the district court entered final judgment against the defendants in the amount of $3,500.

Thereafter, the plaintiff filed a motion for attorneys' fees and expenses, in which she sought $15,640.70, comprised of $13,800 in attorneys' fees and $1,840.70 in costs. The district court determined that the plaintiff was a prevailing party under the FLSA. However, recognizing that the FLSA provides for a mandatory award of reasonable attorneys' fees, the district court was persuaded to conclude that this case presented "special circumstances" and decided that "a reasonable fee is no fee." *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, No. 8:07-cv-52-T-30MAP, slip op. at 3 (M.D. Fla. Feb. 1, 2008) ("District Court Order").

The district court found that the plaintiff subjected the defendants to "unnecessary litigation" and refused to reward such behavior because at no time prior to filing the lawsuit did the plaintiff or the plaintiff's attorney make a written demand for payment of the overtime compensation. *Id.* at 3–5. Further, the

13

district court stressed that the plaintiff's attorney should have notified the defendant law firm, because prior to filing suit in the Middle District of Florida, "it is still reasonable to pick up the phone and call another lawyer so it won't be necessary to file suit." *Id.* at 4. The district court dismissed the plaintiff's counsel's claim that his client did not want him to make a pre-suit demand, "remind[ing] [plaintiff's counsel] that the lawyer is the officer of the Court, not the client." *Id.* at 5. The plaintiff appealed the denial of attorneys' fees and costs, and defendant Karatinos cross-appealed the district court's determination that the plaintiff was a prevailing party.

With the benefit of oral argument, the *Sahyers* opinion affirmed. The *Sahyers* opinion framed the issue in this way: "This appeal is about the power of a district court to supervise the work of the lawyers who practice before it." *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1243 (11th Cir. 2009). The *Sahyers* opinion construed the District Court Order as creating an "exception" to the FLSA's mandatory fee statute based on the district court's "inherent powers to supervise the conduct of the lawyers who come before it and to keep in proper condition the legal community of which the courts are a leading part." *Id.* at 1244. It explained that "at least in the absence of very clear words from Congress, we do not presume that a statute supersedes the customary powers of a court to govern

14

the practice of lawyers in litigation before it." *Id.* at 1245 n.6. I disagree—well-settled Supreme Court precedent rejects the *Sahyers* opinion's "very clear words" standard.

"In the exercise of its supervisory authority, a federal court 'may, *within limits*, formulate procedural rules not specifically required by the Constitution or the Congress.'" *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) (quoting *United States v. Hasting*, 461 U.S. 499, 505 (1983)) (emphasis added). One of those limits on a federal court is when Congress has spoken: "[e]ven a sensible and efficient use of [a court's] supervisory power, however, is invalid if it conflicts with constitutional or statutory provisions." *Thomas v. Arn*, 474 U.S. 140, 148 (1985). "A contrary result 'would confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing.'" *Id.* (quoting *United States v. Payner*, 447 U.S. 727, 737 (1980)). Applied here, the *Sahyers* opinion's denial of attorneys' fees and costs as an exercise of its supervisory authority over the practice of lawyers conflicts with the plain language of the FLSA.

The FLSA is a mandatory fee statute, and we have not recognized any exception to it. "The court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid

15

by the defendant, and costs of the action."  29 U.S.C. § 216(b) (emphasis added).

The Supreme Court, our Circuit, and our sister circuits have consistently

interpreted § 216(b) as mandatory.[1]  We have gone so far as to declare expressly

that "[p]revailing plaintiffs are *automatically entitled* to attorneys' fees and costs

under the FLSA."  *Dale v. Comcast Corp.*, 498 F.3d 1216, 1223 n.12 (11th Cir.

2007) (emphasis added).

In a perfect world, a lawyer who files a lawsuit against another lawyer

would first attempt to resolve the matter outside the courthouse.  Such a practice is

---

[1] *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415 & n.5 (1978) (referring to § 216(b) of the FLSA as one of the "statutes [that] make fee awards mandatory for prevailing plaintiffs"); *Singer v. City of Waco*, 324 F.3d 813, 829 n.10 (5th Cir. 2003) ("The FLSA requires an employer who violates the statute to pay attorney's fees."); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 406 (7th Cir. 1999) ("While the award of fees [under the FLSA] is mandatory, the district court has 'wide latitude' in determining the amount of the fee.") (citation omitted); *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) ("An award of attorney fees to a prevailing plaintiff under § 16(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge.") (citation omitted); *Shelton v. Ervin,* 830 F.2d 182, 184 (11th Cir. 1987) ("Section 216 provides for an award of attorney's fees, *as opposed to granting the court discretion in awarding such fees*, to the prevailing plaintiff in FLSA cases.") (emphasis added); *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985) ("Section 216(b) of the Act makes fee awards mandatory for prevailing plaintiffs."); *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984) ("The payment of attorney's fees to employees prevailing in FLSA cases is mandatory.  The amount of the attorney's fees, however, is within the sound discretion of the trial court.") (internal citation omitted); *Graham v. Henegar*, 640 F.2d 732, 736 n.8 (5th Cir. Unit A Mar. 1981) ("[A]n award of attorney's fees to a prevailing plaintiff in an FLSA suit is mandatory."); *Wright v. Carrigg*, 275 F.2d 448, 449 (4th Cir. 1960) ("With respect to the counsel fee [pursuant to § 216(b)], the court had no discretion to deny it; the law's requirement of an award is mandatory and unconditional."); *Murray v. Playmaker Servs., LLC*, 548 F. Supp. 2d 1378, 1381 (S.D. Fla. 2008) (Ryskamp, J.) (providing that the FLSA "*directs* district courts to award reasonable attorney's fees and costs to a plaintiff, in addition to any judgment received") (emphasis added).

both sensible and efficient. However, a procedural rule that in effect mandates pre-suit notice is invalid if it conflicts with a statutory provision. The Court's opinion in effect reads a requirement of pre-suit notice into § 216(b) of the FLSA, at least where a law firm or lawyer is a defendant, thereby "confer[ring] on [itself] discretionary power to disregard the considered limitations of the law it is charged with enforcing." *Arn*, 474 U.S. at 148 (quoting *Payner*, 447 U.S. at 737). Although a legislature can make pre-suit notice mandatory when it chooses, that circumstance does not apply here. *See, e.g.*, Fla. Stat. § 766.106(2)(a) (providing that "prior to filing a complaint for medical negligence, a claimant shall notify each prospective defendant"). While it is desirable to encourage lawyer collegiality and to discourage unnecessary litigation, I do not believe that we can rewrite a statute to conform with certain policy preferences. *See Reeves v. Astrue*, 526 F.3d 732, 738 (11th Cir. 2008) ("The Supreme Court has advised that whatever merits . . . policy arguments may have, it is not the province of this Court to rewrite the statute to accommodate them.") (quotation marks, alteration, and citation omitted). The *Sahyers* opinion provides binding precedent for a district court to ignore a clear Congressional mandate from a federal statute based on its "inherent powers." Such precedent oversteps the boundaries of our proper duty as neutral arbiters and obviates the role of Congress. My discussion could end here,

17

as the plaintiff was the prevailing party, and the FLSA's plain language is controlling.

Moreover, I also disagree with the Court's statement that "a lawyer's duties as a member of the bar—an officer of the court—are generally greater than a lawyer's duties to the client." *Sahyers*, 560 F.3d at 1245 n.7. It bears repeating that the *Sahyers* opinion failed to cite any statute, rule, local rule, or case from this Circuit, the Middle District of Florida, or elsewhere that even arguably imposes a duty on an attorney to contact prospective opposing counsel where that counsel represents a law firm or a lawyer. I can find no rule of professional responsibility that would place Sahyers' lawyer on notice that it is a breach of professional or ethical responsibility to file a lawsuit against a fellow lawyer without the courtesy of advance notice. Honorable though it may be, providing a lawyer-defendant with pre-suit notice in FLSA cases is neither a requirement, nor a breach of a lawyer's ethical responsibility.

I recognize that the appropriate balance between duty to a client and duty of candor to the court is certainly a difficult one to strike. In certain circumstances, a lawyer's duty to the court is "greater" than his or her duty to a client. However, while counsel owes a duty to the court, *context matters*. The plaintiff did *not* instruct her counsel to commit a crime, to perpetrate a fraud upon the court, or to

18

file a frivolous lawsuit.  Rather, the plaintiff merely instructed her counsel to file a lawsuit, which—considering the fact that defendants filed an answer as opposed to a motion to dismiss and ultimately offered judgment—appeared to have, at least, *some* merit.  In fact, the Model Code of Professional Responsibility appears to require exactly what the plaintiff's counsel did—follow his client's instructions: "[T]he lawyer should always remember that the decision whether to forego legally available objectives or methods because of non-legal factors is ultimately for the client and not for himself."  Model Code of Prof'l Responsibility EC 7-8 (1983); *see also id.* at EC 7-7 (providing that, except in areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, "the authority to make decisions is *exclusively* that of the client and, if made within the framework of the law, such decisions are *binding* on his lawyer") (emphasis added).  Hence, not only is there no rule requiring plaintiff's counsel to give pre-suit notice to his fellow lawyers, plaintiff's counsel had an ethical duty to follow his client's instructions.  In applying the *Sahyers* opinion's reasoning, however, a plaintiff's lawyer must ignore a client's explicit instruction to file an arguably meritorious lawsuit and must first give "word" by way of a phone call, e-mail, or letter before "su[ing] his fellow lawyers."  This rule should not be the law.

19

The *Sahyers* opinion equated the conduct of the plaintiff's counsel to bad faith: "the conscious indifference to lawyer-to-lawyer collegiality and civility exhibited by Plaintiff's lawyer (per his client's request) amounted to harassing Defendants' lawyers by causing them unnecessary trouble and expense and satisfied the bad-faith standard." 560 F.3d at 1246 n.9. It relies on *Litton Systems, Inc. v. American Telephone & Telegraph Co.*, 700 F.2d 785 (2d Cir. 1983), stating that "[a] court . . . may deny an award of litigation expenses to which a client is otherwise entitled." *Sahyers*, 560 F.3d at 1245. As a threshold matter, *Litton Systems*, a Second Circuit opinion, is not binding precedent in this Circuit; it is merely persuasive authority. Additionally, *Litton Systems* does not stand for that broad proposition, and, even if it did, the facts of *Litton Systems* are so far removed from *Sahyers* that the former sheds no light on the latter. The *Litton* court merely affirmed a sanction pursuant to Federal Rule of Civil Procedure 37 finding "gross negligence" and "willful misconduct." Here, the district court did not impose any sanction and did not invoke Rule 37. Instead, it carved out a "special circumstances" exception to the FLSA. *See* District Court Order at 3. The only reason relied upon by the district court to award Sahyers "nothing" as an attorney's fee was the failure to extend the professional courtesy of pre-suit notice to a law firm. This conduct does not amount to bad faith.

20

Finally, I am troubled by the implication that lawyers are entitled to exclusive treatment under the FLSA. Although the *Sahyers* opinion states that it does not intend to create a new rule of pre-suit notice in FLSA cases where the defendant is a law firm or a lawyer, such language will surely fall on deaf ears in this Circuit (as it should) in light of the fact that *Sahyers* is a published opinion, which makes it binding precedent in this Circuit. *See* I.O.P. 2 to Fed. R. App. P. 36 ("Under the law of this circuit, published opinions are binding precedent."). Section 216(b) pays no attention to the occupation of the defendants. Neither should we. The *Sahyers* opinion has unintentionally created a new rule that a plaintiff's failure to give pre-suit notice to a lawyer-defendant in an FLSA case may forfeit the plaintiff's otherwise statutory right to attorneys' fees and costs. Courts within this Circuit will rely on *Sahyers* and will interpret it as creating a discretionary exception to a mandatory fee statute. In point of fact, courts both within this Circuit and outside of this Circuit have already followed suit, recognizing, but not yet applying, the proposition that no fee can be a reasonable fee under the FLSA when a plaintiff fails to give pre-suit notice to a lawyer-defendant. *See Roldan v. Pure Air Solutions, Inc.*, S.D. Fla. 2010, ___ F. Supp. 2d ___, at *3 (No. 07-22203-Civ, Jan. 29, 2010) (citing *Sahyers* and commenting that "whether or not such an outcome [of no fee as a reasonable fee] amounts to

21

judicial policy-making in the face of clear statutory language, we are bound by it").[2]

Moreover, there is no indication in the record that plaintiff's counsel filed this lawsuit in an attempt to "shake down" the defendants for attorneys' fees and costs. The case settled *after discovery ended*, and the defendants made an offer of judgment only after they had the opportunity to look at the evidence. Any determination that the case would have settled if plaintiff's counsel sent a pre-suit notice to the defendants (based on the record as it appears before us) is pure speculation. In other words, pre-suit notice may not have made a difference. Moreover, at the motion hearing before the district court, Sahyers' counsel asserted that (1) Sahyers herself made a demand on the law firm prior to litigation, and (2) he lacked the records necessary to make a pre-suit demand before filing the lawsuit. Tr. of Jan. 24, 2008 Mot. Hr'g at 21:19–23 (arguing that had the

---

[2] *See also Zuleta v. Prof'l Team Paint, Inc.*, M.D. Fla. 2009, ___ F. Supp. 2d ___, at *2 n.2 (No. 6:08-cv-1950-Orl-31DAB, Dec. 10, 2009) (citing *Sahyers* and providing that no fee may be a reasonable fee under the FLSA); *Mora v. Cemex, Inc.*, M.D. Fla. 2009, ___ F. Supp. 2d ___, at *3 (No. 6:08-CV-954-ORL-19DAB, Sept. 29, 2009) (same); *Kerpan v. Biscuits Cafe, Inc.*, D. Or. 2009, ___ F. Supp. 2d ___, at *7 (No. 08-CV-811-ST, June 23, 2009) (citing *Sahyers*, recognizing that "the district court denied a request for attorney fees to a paralegal . . . because her attorney gave his fellow lawyers no notice by telephone, email, or letter of her claim and made no effort to resolve the dispute before filing suit," and declining to apply *Sahyers* because it did not involve lawyers as parties); *Varela v. Innovative Wiring Solutions, LLC*, M.D. Fla. 2009, ___ F. Supp. 2d ___, at *5 (No. 6:07-cv-165-Orl-28KRS, June 22, 2009) (citing *Sahyers* and providing that no fee may be a reasonable fee under the FLSA); *Kwasnik v. Charlee Family Care Servs. of Cent. Fla., Inc.*, M.D. Fla. 2009, ___ F. Supp. 2d ___, at *12 (No. 6:08-cv-926-Orl-31KRS, June 9, 2009) (same).

22

defendants deposed Sahyers, "she would have testified that she did ask for her money"); *id.* at 22:12–18 (arguing that "[plaintiff's counsel] did not have access to [Sahyers'] time records").

While counsel's arguments are not evidence, an evidentiary hearing would prove or disprove these assertions. The district court made no specific factual findings based on any evidence regarding, for example, bad faith on behalf of the plaintiff or the necessity of the litigation. The *Sahyers* opinion relied solely on plaintiff's counsel's failure to give pre-suit notice. Since we have held that "an inquiry into a party's bad faith is best conducted by the district court," *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1438 (11th Cir. 1998), I would at least have remanded this case back to the district court for an evidentiary hearing with instructions to engage in the lodestar analysis.

A district court retains the discretion to determine or to set a reasonable attorney's fee under the FLSA, but the district courts, in my view, lack the discretion to deny all fees and costs by way of a "special circumstances" exception to promote collegiality. I agree completely with the efforts of the distinguished district judge to seek to promote professionalism and civility in the practice of law. It is an important component of judicial administration. I also agree that this Court was well-intentioned in deferring to the district court's discretion; however,

23

I fear that we went too far. My primary concern is with the precedent this case now creates: It is now within the discretion of district courts in our Circuit to deny attorney's fees to lawyers who fail to extend professional courtesies to lawyer-defendants in FLSA and (presumably other) civil rights cases. This new law will undoubtedly discourage public interest lawyers from taking these cases. Although the plaintiff prevailed in her FLSA claim, her lawyer was unable to recover any fees or his client's costs as mandated by Congress. I would prefer that the full Court consider this appeal before creating this new precedent.