**Dissenting opinion issued September 13, 2012**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-10-00710-CV

————————————

**TRYCO ENTERPRISES, INC., SHARON C. DIXON, JAMES DIXON, CROWN STAFFING, INC., AND TROY KEITH DIXON, Appellants**

**V.**

**JAMES A. ROBINSON, Appellee**

On Appeal from 189th District Court
Harris County, Texas
Trial Court Cause No. 2004-49672

## DISSENTING OPINION

I respectfully dissent in part from the majority's judgment. The evidence presented in this case does not justify piercing the corporate veil, and therefore the Dixons and Crown Staffing should not be held liable on that basis for the judgment

against Tryco. Thus, I would reverse the judgment with respect to Troy Dixon and Crown Staffing.

The judgment with respect to James and Sharon Dixon is partially supported on a different ground—the fact that they are responsible under the Texas Tax Code for those Tryco liabilities incurred after the corporation failed to file a franchise report or pay a franchise tax or penalty that was due. These liabilities include Robinson's claims against Tryco for liquidated damages, attorney's fees, expenses, and court costs. I would therefore partially affirm the judgment with respect to James and Sharon Dixon, but only for those elements of damages owed by Tryco to Robinson.

## I. Piercing the corporate veil

In their first issue, the appellants assert that the single-business-enterprise theory is no longer a viable theory of recovery in Texas. They also contend that the evidence was legally and factually insufficient to support liability under an alter-ego theory. In *Castleberry v. Branscum*, 721 S.W.2d 270 (Tex. 1986), the Supreme Court of Texas "comprehensively reviewed the bases for imposing liability despite the corporate structure." *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 454 (Tex. 2009). The six grounds for disregarding the corporate fiction identified in *Castleberry* were:

(1)    when the fiction is used as a means of perpetrating fraud;

2

(2)     where a corporation is organized and operated as a mere tool or business conduit of another corporation;

(3)     where the corporate fiction is resorted to as a means of evading an existing legal obligation;

(4)     where the corporate fiction is employed to achieve or perpetrate monopoly;

(5)     where the corporate fiction is used to circumvent a statute; and

(6)     where the corporate fiction is relied upon as a protection of crime or to justify wrong.

*Castleberry*, 721 S.W.2d at 272 (footnotes omitted).

The majority treats *Castleberry*'s theories to support disregarding the corporate fiction as "criteria," and it concludes that five of the "criteria" favor holding James and Sharon Dixon and Crown Staffing jointly and severally liable for the judgment. Majority op. at 23–24. That approach is inconsistent with *Castleberry*, which specifically noted that the use of the corporate fiction as a sham to perpetrate a fraud is a separate grounds for imposing liability, apart from the allegation that a corporation has been used as a "mere tool or business conduit" of another entity, also known as the "alter ego" theory. *Castleberry*, 721 S.W.2d at 272 ("The basis used here to disregard the corporate fiction, a sham to perpetrate a fraud, is separate from alter ego."). The Court disapproved of authorities that have "blurred the distinction" among the various grounds for disregarding the corporate fiction and have "treated alter ego as a synonym for the entire doctrine of disregarding the corporate fiction." *Id.* When the *Castleberry* Court considered the evidence to support the judgment disregarding the corporate fiction, it

3

considered only one specific theory—sham to perpetrate a fraud—since it was the plaintiff's "strongest" basis to establish liability. *Id.* at 274. This approach shows that the six theories enumerated in *Castleberry* are not criteria or factors to be considered and applied in a unified analysis, as the majority has done, rather they are separate theories that must be independently analyzed.

This court and other courts of appeals have understood the six *Castleberry* bases as separate, independent theories for disregarding the corporate fiction.[1] Because each *Castleberry* basis for disregarding the corporate fiction is an independent ground for recovery, each one must be specifically pleaded or it is waived.[2] In this case, Robinson's live pleading, the second amended petition,

---

[1] *See, e.g.*, *Hideca Petroleum Corp. v. Tampimex Oil Int'l, Ltd.*, 740 S.W.2d 838, 843 (Tex. App.—Houston [1st Dist.] 1987, no writ) ("The doctrine of 'alter ego' is a separate and distinct theory and is not to be confused with other reasons for disregarding the corporate fiction."); *Schlueter v. Carey*, 112 S.W.3d 164, 168 (Tex. App.—Fort Worth 2003, pet. denied) ("Alter ego and sham to perpetrate a fraud are separate bases for disregarding the corporate fiction, and each must be pleaded separately."); *Stewart & Stevenson Servs., Inc. v. Serv-Tech, Inc.*, 879 S.W.2d 89, 110 (Tex. App.— Houston [14th Dist.] 1994, writ denied) ("[T]he trial judge included within the alter ego theory another theory for disregarding the corporate veil— fraud. This was condemned in *Castleberry*."); *Francis v. Beaudry*, 733 S.W.2d 331, 335 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) ("In *Castleberry*, the Texas Supreme Court made it quite clear that the theory based upon 'a sham to perpetrate a fraud,' which also provides a means of disregarding the corporate fiction, is entirely separate from the alter ego theory.").

[2] *Castleberry v. Branscum*, 721 S.W.2d 270, 275 n.5 (Tex. 1998); *Villanueva v. Astroworld, Inc.*, 866 S.W.2d 690, 695 (Tex. App.—Houston [1st Dist.]

4

stated theories of recovery based upon fraudulent transfer, alter ego, single business enterprise, and Section 171.255 of the Tax Code. During closing arguments following the presentation of evidence, the trial court asked Robinson's counsel, "You didn't put on a case for fraudulent transfer, did you?" He responded, "No, Judge. We were looking at alter ego and single [business enterprise] theor[ies]." Thus, Robinson pleaded only two equity-based theories to the trial court to justify holding the Dixons and Crown Staffing liable for Tryco's debts: single-business-enterprise theory and alter-ego theory.

## A. Single-business-enterprise theory

The majority acknowledges that the single-business-enterprise theory is not a viable theory under Texas law to impose one corporation's obligations on another. *SSP Partners*, 275 S.W.3d at 456. Accordingly, this theory is not a basis upon which this court may affirm the judgment ordering that the Dixons and Crown Staffing are jointly and severally liable for Tryco's debts owed to Robinson.[3] *See Big Easy Cajun Corp. v. Dallas Galleria Ltd.*, 293 S.W.3d 345,

---

1993, writ denied); *W & F Transp., Inc. v. Wilhelm*, 208 S.W.3d 32, 47 n.16 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Schott Glas v. Adame*, 178 S.W.3d at 307, 314 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *Shlueter*, 112 S.W.3d at 168.

[3] The majority concludes that the "un-refuted evidence establishes that Tryco and Crown Staffing were both alter egos of Sharon and James Dixon and part of a single business enterprise for the purposes of piercing the corporate veil under former Business Corporations Act article 2.21 and under the

347 (Tex. App.—Dallas 2009, pet. denied) (observing that *SSP Partners* "invalidated" the single-business-enterprise theory, and reversing judgment secured upon that theory). Therefore, the only remaining theory upon which the trial court could have based its judgment holding the Dixons and Crown Staffing liable was the alter-ego theory. *See SSP Partners*, 275 S.W.3d at 454 (noting that *Castleberry*'s reference to liability "where a corporation is organized and operated as a mere tool or business conduit of another corporation" corresponds to the alter-ego theory).

## B. Alter-ego theory

The evidence presented to the trial court was legally insufficient to support the judgment disregarding the corporate fiction based upon alter-ego theory. Texas law presumes that separate corporations are distinct entities. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002). Because the corporate form normally insulates shareholders, officers, and directors from liability for corporate obligations, *SSP Partners*, 275 S.W.3d at 451 n.29, the same presumption of legal separateness applies to a corporation in relation to its officers and shareholders. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458

---

current provision, Business Organizations Code section 21.223." Majority op. at 22. Insofar as the majority suggests that the single-business-enterprise theory retains any application in a veil-piercing analysis, I respectfully disagree.

(Tex. 1997); *Tri-State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 250 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  The burden of proof to overcome the presumption rests on the party seeking to disregard the corporate separateness.  *Torregrossa v. Szelc*, 603 S.W.2d 803, 804 (Tex. 1980); *Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 82 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

An entity or person does not become jointly liable for a corporation's obligations "merely because they were part of a single business enterprise" or "merely because of centralized control, mutual purposes, and shared finances." *SSP Partners*, 275 S.W.3d at 452, 455.  Invoking the doctrine involves two considerations: (1) "the relationship between [the] two entities" and (2) "whether the entities' use of limited liability was illegitimate."  *Id.* at 455.  The factors relevant to the first consideration "are almost entirely irrelevant" to the determination of the second consideration, which "must be based on a careful evaluation of the policies supporting the principle of limited liability."  *Id.*

### 1. *Relationship between the entities*

Regarding the first consideration identified in *SSP Partners*, alter-ego theory requires a particular relationship between two entities or an entity and an individual in order to disregard the corporate form: the corporation is organized and operated as a "mere tool or business conduit" of another corporation or

7

individual. *Castleberry*, 721 S.W.2d at 272. Stated differently, "[a]lter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Id.* (citing *First Nat'l Bank in Canyon v. Gamble*, 132 S.W.2d 100, 103 (1939)). The *Castleberry* Court stated that a determination of whether this level of unity exists "is shown from the total dealings" of the corporation, and it listed several relevant indicators:

- the degree to which corporate formalities have been followed and corporate and individual property have been kept separately;
- the amount of financial interest, ownership, and control is maintained over the corporation; and
- the use of the corporation for personal purposes.

*Id.*

### a. *Tryco's relationship to the Dixons*

In determining whether unity exists between a corporation and an individual, we look to the following nonexclusive factors:

- payment of alleged corporate debts with personal checks or other commingling of funds;
- representations that the individual will financially back the corporation;
- diversion of company profits for the individual's personal use;
- inadequate capitalization; and
- other failures to keep corporate and personal assets separate.

*Am. Heritage, Inc. v. Nev. Gold & Casino, Inc.*, 259 S.W.3d 816, 830 (Tex. App.—Houston [1st Dist.] 2008, no pet.). The majority concludes that "the evidence

showed that James and Sharon Dixon exercised absolute ownership and control over both corporations, maintained a very significant personal financial interest in both corporations, and used them for personal purposes." Majority op. at 21. However, the majority identifies no evidence that Sharon and James Dixon used Tryco for "personal purposes," and the record contains none. There was no evidence that the Dixons commingled their personal property with Tryco's property, that Tryco paid the Dixons' personal debts, that the Dixons paid Tryco's debts, that the Dixons represented that they would financially back Tryco, or that the Dixons used Tryco or its assets for personal purposes. *See Am. Heritage*, 259 S.W.3d at 830. There was evidence that James and Sharon Dixon owned Tryco and managed the company. However, proving that an individual is a majority or sole shareholder and serves in a managerial capacity is insufficient to support an alter-ego finding. *See Grain Dealers*, 943 S.W.2d at 458; *Am. Heritage*, 259 S.W.3d at 830; *Penhollow Custom Homes, LLC v. Kim*, 320 S.W.3d 366, 373–74 (Tex. App.—El Paso 2010, no pet.); *Nichols v. Tseng Hsiang Lin*, 282 S.W.3d 743, 747 (Tex. App.—Dallas 2009, no pet.); *Morris v. Powell*, 150 S.W.3d 212, 220 (Tex. App.—San Antonio 2004, no pet.); *Goldstein v. Mortenson*, 113 S.W.3d 769, 781–82 (Tex. App.—Austin 2003, no pet.).

The majority relies on evidence that James and Sharon Dixon "neglected the corporate formality of paying Tryco's corporate franchise tax." Majority op. at 21.

9

It is questionable whether the failure to observe "corporate formalities" is a factor that supports an alter-ego finding. It was mentioned as a factor in *Castleberry*, *see* 721 S.W.2d at 272, but the Legislature subsequently enacted a statute to protect individuals from liability for "any obligation of the corporation on the basis of the failure of the corporation to observe any corporate formality." TEX. BUS. ORGS. CODE ANN. § 21.223(a)(3) (West 2011). Several courts of appeals, including this one, have relied on this provision's predecessor, which contained substantially identical language, to conclude that the observance of corporate formalities is no longer a relevant factor in the alter-ego analysis.[4]

In holding that the evidence established that Sharon and James Dixon were alter egos of Tryco, the majority also observed that they "transferred all of Tryco's assets to Crown Staffing for the purpose of avoiding payment of the judgment in

---

[4]    *See Howell v. Hilton Hotels Corp.*, 84 S.W.3d 708, 714 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (op. on rehearing); *Sparks v. Booth*, 232 S.W.3d 853, 868–69 (Tex. App.—Dallas 2007, no pet.); *Morris v. Powell*, 150 S.W.3d 212, 220 (Tex. App.—San Antonio 2004, no pet.); *Schlueter*, 112 S.W.3d at 170; *Dominguez v. Payne*, 112 S.W.3d 866, 869 n.2 (Tex. App.—Corpus Christi 2003, no pet.); *Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 499 (Tex. App.—Texarkana 2002, pet. denied); *N. Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 119 n.5 (Tex. App.—Beaumont 2001, pet. denied); *see also Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 233 (Tex. 1990) (Hecht, J., dissenting) (noting that "a corporation's failure to observe corporate formalities is not alone enough to imply alter ego, especially when the corporation is closely held" because "observance of corporate formalities is now by statute not even a factor to be considered in determining alter ego").

the FLSA suit." Majority op. at 21. Robinson abandoned his fraudulent-transfer claim at trial. Even if the majority's factual observation is true, this does not demonstrate the type of relationship between the Dixons and Tryco necessary to establish alter ego, which is defined as a degree of unity so high that the separateness between the individual and the corporation has ceased. *See Castleberry*, 721 S.W.2d at 272. The situation perceived by the majority is more consonant with a typical "sham to perpetrate a fraud" theory, which the *Castleberry* Court described as applying when:

> a closely held corporation owes unwanted obligations; it siphons off corporate revenues, sells off much of the corporate assets, or does other acts to hinder the on-going business and its ability to pay off its debts; a new business then starts up that is basically a continuation of the old business with many of the same shareholders, officers, and directors.

*Id.* at 275. However, Robinson did not plead the "sham to perpetrate a fraud" theory. The fact that the Dixons may have transferred Tryco's assets to Crown Staffing in order to avoid a judgment does not prove alter ego, the theory that Robinson did plead. *See id.* at 272 ("[A] sham to perpetrate a fraud, is separate from alter ego.").

### b. Tryco's relationship to Crown Staffing

With respect to Crown Staffing, the correct approach is to follow *Castleberry*'s example and consider several nonexclusive factors to determine whether the two corporations were not maintained as separate entities, including:

11

- common employees;
- common offices;
- centralized accounting;
- payment of wages by one corporation to another corporation's employees;
- common business name;
- services rendered by the employees of one corporation on behalf of another corporation;
- undocumented transfers of funds between corporations; and
- unclear allocation of profits and losses between corporations.

*SSP Partners*, 275 S.W.3d at 450–51, 455 (referencing and approving factors listed in *Paramount Petroleum Corp. v. Taylor Rental Ctr.*, 712 S.W.2d 534, 536 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.)).

The majority considers the following evidence as establishing that Crown Staffing was an alter ego of Tryco: "Crown Staffing had the same officers as Tryco, including James Dixon, its president; it took over the offices of Tryco at the same location; it used the same telephone numbers as Tryco; it shared common employees with Tryco; it performed the same temporary staffing services for essentially the same companies; and it was managed by the same managers." Majority op. at 21. Assuming that all of the evidence that Robinson presented was admissible, such evidence did tend to show these facts.

However, the majority overlooks the absence of any evidence that Tryco and Crown Staffing ever existed and operated simultaneously. In fact, the available evidence tends to show the opposite. At the time of Edison's testimony regarding his previous employment at Tryco, he worked for Crown Staffing. He did not

12

testify that he was ever employed at both companies simultaneously. Robinson testified that when he called Tryco's telephone number, he spoke to someone who identified himself as working for Crown Staffing. He did not testify that the employee indicated that he was a common employee of both companies. Robinson further testified that when he visited Tryco's business location, he saw that the name had changed. He did not indicate that Tryco also advertised a presence at that location. In the absence of a showing that two corporations are going concerns at the same time, the evidence does not show that "a corporation is organized and operated as a mere tool or business conduit of another corporation." *Castleberry*, 721 S.W.2d at 272. When appellate courts have found sufficient evidence to support an alter-ego finding as between two corporations, the evidence demonstrated that the two corporations operated simultaneously. *See, e.g.*, *Hideca Petroleum Corp. v. Tampimex Oil Int'l, Ltd.*, 740 S.W.2d 838, 843–44 (Tex. App.—Houston [1st Dist.] 1987, no writ); *Harwood Tire—Arlington, Inc. v. Young*, 963 S.W.2d 881, 885–86 (Tex. App.—Fort Worth 1998, pet. dism'd by agr.). It is impossible that Crown Staffing served as the alter ego of Tryco, or vice versa, if they did not exist and operate at the same time.

*        *        *

The majority has impermissibly "blurred the distinction" among the various theories of liability identified in *Castleberry* by treating each basis "as a synonym

13

for the entire doctrine of disregarding the corporate fiction." *See Castleberry*, 721 S.W.2d at 272. The only valid *Castleberry* basis that Robinson pleaded was alter-ego theory. I would hold that the evidence was legally insufficient to demonstrate the type of relationship between Tryco, James and Sharon Dixon, and Crown Staffing that alter-ego theory requires. Thus, the evidence does not support a finding that a relationship sufficient to disregard Tryco's corporate structure existed. *See SSP Partners*, 275 S.W.3d at 455.

### 2. *Illegitimate use of limited liability*

Furthermore, the majority has not identified legally sufficient evidence to support the second consideration in disregarding the corporate structure: "whether the entities' use of limited liability was illegitimate." *Id.* The majority recognizes that actual fraud must be proved in order to disregard the corporate fiction.[5]

---

[5] After *Castleberry*, legislation was enacted to provide that a showing of constructive fraud does not suffice to disregard the corporate structure. This was accomplished by enacting former Article 2.21 of the Texas Business Corporation Act, which has since been recodified as Section 21.223 of the Texas Business Organizations Code. *See* Act of May 12, 1989, 71st Leg., R.S., ch. 216, § 1, 1989 Tex. Gen. Laws 974, 974–75 (amended 1993, 1997, 2003, 2007) (former Business Corporations Act Article 2.21); Act of May 29, 2003, 78th Leg., R.S., ch. 182, § 1, 2003 Tex. Gen. Laws 267, 427 (current version at TEX. BUS. ORGS. CODE ANN. § 2.223); *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 & n.57 (Tex. 2009) (discussing recodification). Under that statute, the corporate fiction may be disregarded if the plaintiff shows that a corporation was "used for the purpose of perpetrating and did perpetrate an actual fraud" on the plaintiff, and such actual fraud was "primarily for the direct personal benefit" of the corporation's owner or affiliate. TEX. BUS. ORGS. CODE ANN. § 21.223(b).

Majority op. at 22. The majority suggests that the actual fraud in this case was "the fraud of incorporating Crown Staffing, forfeiting Tryco's corporate charter, and transferring Tryco's assets to Crown Staffing to avoid execution of Robinson's judgment against Tryco." Majority op. at 17. However, even assuming that these facts were proved, *Castleberry* demonstrates that these circumstances do not constitute actual fraud to justify piercing the corporate veil under an alter-ego theory.

In *Castleberry*, a corporation called Texan Transfer was formed by Castleberry, Branscum, and Byboth for the purpose of operating a furniture moving business. *Castleberry*, 721 S.W.2d at 274. Each individual owned one third of Texan Transfer's shares. *Id.* Soon thereafter, Branscum formed a competing business called Elite Moving. *Id.* Castleberry and Branscum had a falling out over the creation of Elite Moving, and Castleberry sold his stock back to Texan Transfer in exchange for a promissory note. *Id.* After making one payment on the note, Texan Transfer defaulted on the remaining balance. *Id.*

On at least three occasions, Branscum told others that he would deplete Texan Transfer of its assets to ensure that Castleberry was not paid on the promissory note. *Id.* at 274–75. After the buy-out, Elite Moving took more and

---

This statutory provision has abrogated *Castleberry* insofar that actual fraud, not constructive fraud, is required to disregard the corporate form. *SSP Partners*, 275 S.W.3d at 455.

15

more of Texan Transfer's business. *Id.* at 274. The two companies operated out of the same location, and Texan Transfer allowed Elite Moving to use its trucks despite the lack of a written rental agreement or other records to show how much Elite Moving owed for such usage. *Id.* After Castleberry filed suit, Branscum and Byboth formed a third corporation which also operated out of the same location, they terminated a major contract that Texan Transfer had with a furniture company, and then they obtained for the third corporation the same contract. *Id.* at 274–75. The jury found that Branscum and his co-owner had used Texan Transfer as a sham to perpetrate a fraud on Castleberry, and the trial court rendered judgment that Branscum and Byboth were personally liable for the promissory note. *Id.* at 271.

The Supreme Court of Texas held that constructive fraud, not just actual fraud, was adequate to disregard the corporate fiction. *See id.* at 272–73. The Court explained the difference between the two types of fraud as follows:

> Actual fraud usually involves dishonesty of purpose or intent to deceive, whereas constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests.

*Id.* at 273 (quoting *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964)). Turning to the evidence, the Court stated:

> We hold that this is some evidence of a sham to perpetrate a fraud. A jury could find that Byboth and Branscum manipulated a closely-held

16

corporation, Texan Transfer, and formed competing businesses to ensure that Castleberry did not get paid. Castleberry had little choice but to sell his shares back to the corporation. While this evidence may be no evidence of intentional fraud, constructive fraud, not intentional fraud, is the standard for disregarding the corporate fiction on the basis of a sham to perpetrate a fraud.

*Id.* at 275. Thus, although the *Castleberry* Court questioned whether "intentional fraud" had been established, it affirmed the trial court's judgment on the basis of constructive fraud. *Id.* at 277.

*Castleberry* has been abrogated such that constructive fraud no longer suffices to demonstrate that use of the corporate structure was illegitimate. *See SSP Partners*, 275 S.W.3d at 455. Nevertheless, its comment that the evidence in that case "may be no evidence" of actual fraud undermines the majority's holding that the facts in this case are sufficient to prove actual fraud. The "fraud" that the majority perceives was "incorporating Crown Staffing, forfeiting Tryco's corporate charter, and transferring Tryco's assets to Crown Staffing to avoid execution of Robinson's judgment against Tryco." Majority op. at 17. These acts mirror those in *Castleberry*, where two businessmen created separate corporations and diverted assets and business to those corporations in order to avoid paying a debt to one of their former business partners. The majority has failed to distinguish *Castleberry* from this case.

The evidence is also legally insufficient to prove that the "actual fraud" in this case, whatever it may be, was undertaken primarily for the direct personal

17

benefit of the Dixons or Crown Staffing. *See* TEX. BUS. ORGS. CODE ANN. § 21.223(b) (permitting disregard of corporate fiction when actual fraud was done "primarily for the direct personal benefit" of the corporate owner or affiliate). The majority does not address what evidence it believes is relevant to this requirement for disregarding the corporate fiction. The record contains no evidence concerning what benefit, if any, the alleged transaction provided to the Dixons or Crown Staffing, such as a transfer of assets to a personal account or payment of a personal debt. In the absence of such evidence, the judgment disregarding the corporate separateness of Tryco and the other defendants cannot stand.[6]

*     *     *

---

[6]    *See Gollin v. Hoard Gainer Indus. Co.*, No. 01-03-00435-CV, 2005 WL 110374, at *4–5 (Tex. App.—Houston [1st Dist.] Jan 20, 2005, pet. denied) (mem. op.) (holding that evidence that CEO's salary increased after company accepted merchandise on credit was not legally sufficient evidence of direct personal benefit from transaction); *Shook v. Walden*, No. 03-09-00576, 2012 WL 895946, at *13 (Tex. App.—Austin Mar. 16, 2012, pet. filed) (holding that evidence that individual was primary investor in LLC and only one of two members did not raise inference that LLC's alleged actual fraud was committed for his direct personal benefit); *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 388–89 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that because record did not show what corporation's owner did with money advanced to his corporation, "including, for example, whether he deposited [the money] into his personal account or used them to purchase personal items or to pay personal debts," the evidence was legally insufficient to support a finding of direct personal benefit).

18

The majority has substituted a "subjective perception of unfairness," *SSP Partners*, 275 S.W.3d at 455, for the showing that the Legislature and the Supreme Court of Texas require in order to disregard the corporate fiction: actual fraud perpetrated primarily for a direct personal benefit. I would hold that the evidence in this case is legally insufficient to support a finding that assets and business were transferred from Tryco to Crown Staffing with the purpose of perpetrating an actual fraud against Robinson primarily for the direct personal benefit of the Dixons and Crown Staffing.

I would hold that the evidence was legally insufficient to hold the Dixons and Crown Staffing liable for Tryco's debts on a corporate veil-piercing theory. Accordingly, I would sustain the first issue.

## II. Loss of corporate privileges

Although not addressed by the majority opinion because of their resolution of the veil-piercing claim, there was a separate basis alleged at trial to hold James and Sharon Dixon liable for the judgment against Tryco.[7] In their third issue, James and Sharon Dixon contend that they cannot be held liable for Tryco's debt

---

[7] Robinson did not plead Section 171.255 of the Tax Code as basis for recovery against the other defendants, Troy Dixon or Crown Staffing. Accordingly, insofar as the judgment against them might have been premised on this theory of recovery, the judgment was erroneous. *See* Tex. R. Civ. P. 301 ("The judgment of the court shall conform to the pleadings . . . ."). Moreover, there was no evidence that Troy Dixon or Crown Staffing was ever an officer or director of Tryco.

on Robinson's theory that Tryco forfeited its corporate privileges and Section 171.255 of the Tax Code provides for the personal liability of corporate directors and officers in such a case. *See* TEX. TAX CODE ANN. § 171.255 (West 2008). The Dixons argue that the statutory provision imposes personal liability for debts created or incurred after the forfeiture of corporate privileges, but "all of the operative facts giving rise to the alleged debt occurred at least two to three years before the corporate privileges were forfeited."

In response, Robinson argues that "in this matter the debts and penalties incurred were part of a statutory scheme and the penalty imposed was permissive, thus no debt existed until the judgment was entered after the forfeiture." He relies on *Cain v. State*, 882 S.W.2d 515 (Tex. App.—Austin 1994, no writ), for the proposition that because Robinson's claims were premised on the federal Fair Labor Standards Act, Tryco incurred the debt when the original judgment was entered, after the forfeiture of its corporate privileges. The parties do not dispute—and the evidence adduced at trial does not contradict—the operative facts that Robison's employment at Tryco ended in 2000, the event giving rise to the forfeiture of corporate privileges occurred sometime thereafter, and the judgment in the original suit was entered after that.[8]

---

[8] The parties apparently assume that Tryco forfeited its corporate privileges a few weeks before Robinson obtained the judgment in the original suit, on August 22, 2003, and that under Section 171.255 James and Sharon Dixon

20

Section 171.255 of the Tax Code provides in relevant part:

If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived.

---

became liable for Tryco's debts created or incurred after that date. However, both the record and the law refute their assumption.

At trial, Robinson presented an order of the Secretary of State, dated August 22, 2003, forfeiting Tryco's certificate of authority, and the trial court took judicial notice of the order. The order states that Tryco "has not revived its forfeited privileges within 120 days after the date that the corporation privileges were forfeited." By logical implication of this finding, the order reflects that Tryco's corporate privileges must have been forfeited at least 120 days before August 22.

Moreover, the date that the corporate privileges were forfeited was not likely the same date on which the report, tax, or penalty occasioning the forfeiture had been due, *see* TEX. TAX CODE ANN. § 171.255(a) (West 2008), as the statutory procedures authorizing forfeiture in such circumstances require that the Comptroller of Public Accounts provide the corporation with notice at least 45 days before the forfeiture. *See* TEX. TAX CODE ANN. §§ 171.251, 171.256. The directors or officers of a corporation become liable for the corporation's debts on the date after the report, tax, or penalty is due but not filed or paid. *See Tri-State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 251 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding that official list of corporations whose corporate privileges were suspended is not proof of the "relevant date" under Section 171.255 for when report, tax, or penalty was due); *Dae Won Choe v. Chancellor, Inc.*, 823 S.W.2d 740, 743 (Tex. App.—Dallas 1992, no writ) (holding that personal liability of corporate director or officer starts after the date on which corporation was required to file a report or pay a tax or penalty that was due).

21

TEX. TAX CODE ANN. § 171.255(a). In this provision, the meaning of "create" is "to bring into existence something which did not exist," while "incurred" means "brought on," "occasioned," or "caused." *See Schwab v. Schlumberger Well Surveying Corp.*, 198 S.W.2d 79, 81 (Tex. 1946) (interpreting predecessor statute). At all times during Robinson's employment at Tryco through the entry of the judgment in the original suit, the Tax Code's chapter on franchise taxes defined "debt" as "any legally enforceable obligation measured in a certain amount of money which must be performed or paid within an ascertainable period of time or on demand." Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex. Gen. Laws 1734, 1735, *repealed by* Act of May 19, 2006, 79th Leg., 3d C.S., ch. 1, § 5, 2006 Tex. Gen. Laws 1, 24 (effective Jan. 1, 2008); *see also Taylor v. First Cmty. Credit Union*, 316 S.W.3d 863, 869 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (applying foregoing definition of "debt" to Section 171.255); *Cain*, 882 S.W.2d at 516 n.1 (same). "In determining whether a debt has been created or incurred, a court should strictly construe this statutory language to protect individuals against whom recovery of such quasi-penal damages is sought." *McKinney v. Anderson*, 734 S.W.2d 173, 174 (Tex. App.—Houston [1st Dist.] 1987, no writ) (citing *Schwab*, 198 S.W.2d at 81). Moreover, it is Robinson's burden to prove that the debts for which he seeks to hold James and Sharon Dixon liable under Section 171.255 were created or incurred after the date of the event

22

occasioning the forfeiture of Tryco's corporate privileges. *See Wilburn v. State*, 824 S.W.2d 755, 763 (Tex. App.—Austin 1992, no writ).

The original judgment reflects that Robinson was awarded $58,349.00 for unpaid wages, $58,349.00 for "willful violation of the Fair Labor Standards Act," $16,558.75 for attorney's fees, $603.00 for expenses, and $457.00 for costs of court. Because each of these amounts was assessed for a different purpose, each must be considered separately to determine the dates upon which they met all the conditions of a debt for which a corporate director or officer may be held liable under Section 171.255. Each part of the award became a debt for the purposes of Section 171.255 when it was (1) a certain amount of money (2) created or incurred as (3) a legally enforceable obligation (4) which must be performed or paid within an ascertainable period of time or on demand. *See* TEX. TAX. CODE ANN. § 171.255; Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex. Gen. Laws 1734, 1735.

Tryco's liability to Robinson arose out of its failure to pay him overtime compensation pursuant to the federal Fair Labor Standards Act. *See* 29 U.S.C. § 207(a)(2) (providing that non-exempt employee working longer than 40 hours per week shall receive "compensation for his employment in excess of [40 hours] specified at a rate not less than one and one-half times the regular rate at which he is employed"). The "penalties" section of the FLSA provides, in relevant part:

Any employer who violates the [overtime pay provision] of this title shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. . . . The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b). In interpreting the FLSA's provisions, we follow the relevant precedents of the United States Supreme Court and the Supreme Court of Texas, and we may also look to the precedents of other federal courts for guidance. *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993).

## A. Unpaid overtime compensation

As to the $58,349.00 award for unpaid overtime compensation, the original judgment implies—and the parties apparently assume—that Robinson, who worked as a van driver for Tryco, was a non-exempt employee who benefited from the overtime compensation provisions of the FLSA.[9] The "unpaid overtime

---

[9] The FLSA provides for classes of employees who are exempt from the overtime pay provision. *See* 29 U.S.C. § 213(a), (b) (listing classes of exempt employees); *Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 264 (5th Cir. 2000) (recognizing that FLSA exempts salaried employees working in bona fide executive, administrative, or professional capacity). Were Robinson an employee exempt from the FLSA's overtime provision, he would have had no basis for recovery under the FLSA for unpaid overtime compensation. *See Cowart*, 213 F.3d at 267 (finding that salaried

24

compensation" due under the FLSA, *see* 29 U.S.C. § 216(b), is equal to the number of overtime hours that Robinson worked multiplied by his "regular rate" multiplied by one and a half times. *See* 29 U.S.C. § 207(a)(2)(C); 29 C.F.R. § 778.107. This was a "certain amount of money," *see* Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex. Gen. Laws 1734, 1735, even though to arrive at the amount of overtime compensation owed to Robinson one needs to know facts about when he worked and what his regular rate was. *Cf. Dae Won Choe*, 823 S.W.2d 743–44 (remanding Section 171.255 action to determine fact question regarding amount of debt that corporation incurred on a services contract after non-payment of franchise tax). Furthermore, "[i]t is well settled that [a] separate cause of action for overtime compensation accrues at each regular payday immediately following the work period during which the services were rendered and for which the overtime compensation is claimed." *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1050 (5th Cir. 1973) (internal quotation marks omitted); *see also Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1144 (9th Cir. 2007) ("A new cause of action accrues at each payday immediately following the work period for which compensation is owed."); *Knight v. Columbus*, 19 F.3d 579, 581 (11th Cir. 1994) ("Each failure to pay overtime constitutes a *new* violation of the FLSA."). If a new

administrative employees were exempt from the overtime compensation provision and affirming summary judgment against them).

cause of action accrued on each payday that Robinson was not paid the overtime compensation owed to him, it follows that on such paydays he acquired a "legally enforceable obligation" that was payable "on demand." *See* Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex. Gen. Laws 1734, 1735.

By state statute, Tryco was required to pay non-exempt employees like Robinson at least twice a month. *See* TEX. LAB. CODE ANN. § 61.011(b) (West 2006); *see also Igal v. Brighstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 81–82 (Tex. 2008) (observing that payday law "requires private employers of all types and sizes to pay wages owed to employees in full, on time, and on regularly scheduled paydays" (footnotes omitted)). Robinson's last payment should have been made either six days after the date that his employment ended or not later than the next regularly scheduled payday. *See* TEX. LAB. CODE ANN. § 61.014. Thus, Tryco first incurred the debt for unpaid overtime compensation on each respective payday or, with respect to the overtime that Robinson worked during his last work period, on a date shortly after his termination. The fact that those debts were later aggregated and reduced to a judgment does not mean that Tryco "incurred" the $58,349.00 for unpaid wages on the date of the judgment. *Cf. McKinney*, 734 S.W.2d at 175 (holding that corporation incurred debts on the date that equipment lease was executed even though lease was payable in installments). Because Tryco incurred the debt for Robinson's unpaid overtime compensation

26

before the date of the event occasioning the forfeiture of its corporate privileges, I would hold that James and Sharon Dixon are not liable under Section 171.255 for Robinson's unpaid overtime wages.

## B. Liquidated damages

Robinson's other award of $58,349.00 was "for willful violation of the Fair Labor Standards Act." For employers that violate the FLSA's overtime requirements, Section 216 prescribes additional liquidated damages equal to the amount of the unpaid overtime compensation. *See* 29 U.S.C. § 216(b). Such liquidated damages are the norm and have been characterized as "mandatory." *See, e.g.*, *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004); *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3rd Cir. 1991). However, "Congress has provided the courts with some discretion to limit or deny liquidated damages." *Martin*, 381 F.3d at 584 (citing 29 U.S.C. § 260); *see also Lee v. Coahoma Cnty.*, 937 F.2d 220, 227 (5th Cir. 1991) (observing that "even if the district court determines that the employer's actions were in good faith and based on reasonable grounds, the court has discretion to award liquidated damages"). Section 260 of the FLSA provides:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or

27

> award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260. This provision means that "[i]f the district court finds that [the] employer's action which violated the FLSA was taken in good faith, which good faith was supported by reasonable grounds for believing that the actions complied with the FLSA, it may choose not to award liquidated damages." *Lee*, 937 F.2d at 226–27; *accord Martin*, 381 F.3d at 584. Although Section 171.255 is strictly construed in favor of James and Sharon Dixon as Tryco's corporate officers, *see McKinney*, 734 S.W.2d at 174, it is apparent that the trial court's discretion to award liquidated damages means that such damages were not a "certain amount of money" until the date of the judgment. *See Taylor*, 316 S.W.3d at 869 (holding that damages incurred by corporation for breach of contract were not a "certain amount of money" on the date that the contract was executed because no money was then owed nor had breach occurred); *Jonnet v. State*, 877 S.W.2d 520, 523–24 (Tex. App.—Austin 1994, writ denied) (observing that "unlike situations in which the execution of a written instrument or a specific transaction creates an obligation or duty to pay for a later breach of the agreement, the obligation to pay the statutory penalty [for failing to plug inactive oil wells] *only arises* if and when a penalty is actually assessed."). Thus, the date that the judgment was rendered awarding Robinson $58,349.00 for liquidated damages was the date on which Tryco incurred that particular debt. Because the judgment was rendered after the

28

event occasioning the forfeiture of corporate privileges, I would hold that James and Sharon Dixon are liable under Section 171.255 for this part of the award.

### C. Attorney's fees and other costs

As to the attorney's fees, expenses, and other costs awarded to Robinson, the FLSA provides such a recovery to a prevailing employee. *See* 29 U.S.C. § 216(b) ("The court in such action shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). In contrast to the FLSA's authorization for liquidated damages, this type of award is truly mandatory. *See Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 603 F.3d 888, 893 & n.1 (11th Cir. 2010); *Singer v. City of Waco*, 324 F.3d 813, 829 n.10 (5th Cir. 2003); *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001). However, the trial court has "wide latitude" in determining these amounts because they involve factual issues. *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 406 (7th Cir. 1999). Thus, the amount of fees, expenses, and other costs to which Robinson was entitled did not become a "certain amount of money" until the date that the judgment was entered—a date after the event occasioning the forfeiture of Tryco's corporate privileges. *See Taylor*, 316 S.W.3d at 869; *Jonnett*, 877 S.W.2d at 523–24. Consequently, I would hold that James and Sharon Dixon are liable under Section 171.255 for Robinson's attorney's fees, expenses, and court costs.

\*　　\*　　\*

29

I would sustain James Dixon and Sharon Dixon's third issue, insofar as the judgment orders that they are liable for Robinson's unpaid overtime compensation. I would overrule their issue in all other respects, insofar that the judgment orders that they are liable for Robinson's liquidated damages, attorney's fees, expenses, and court costs.

Michael Massengale
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Justice Massengale, concurring in part and dissenting in part.